John DOE, Plaintiff–Appellant,

v.

John T. WIGGINTON, et al.,
Defendants–Appellees.

No. 93–5801.

United States Court of Appeals,
Sixth Circuit.

Submitted Feb. 1, 1994.

Decided April 19, 1994.

John Doe, pro se.

Connie V. Malone, Office of Gen. Counsel, Corrections Cabinet, Frankfort, KY (briefed), for defendants-appellees.

Before: MILBURN and GUY, Circuit Judges; and BROWN, Senior Circuit Judge.

RALPH B. GUY, Jr., Circuit Judge.

Plaintiff John Doe, proceeding pro se, appeals the magistrate judge's dismissal, pursuant to Fed.R.Civ.P. 56, of his 42 U.S.C. § 1983 action for money damages and declaratory and injunctive relief. Doe was incarcerated in Kentucky until after the commencement of this case; defendants are officials and officers of the prisons at which Doe was incarcerated. Doe argues that his rights under the Eighth and Fourteenth Amend-

ments were violated by a Kentucky rule which makes at-request HIV testing available only to inmates who satisfy certain specified criteria. Doe also maintains that his "constitutional right to privacy" was violated when a prison officer learned from Doe's medical file that Doe is HIV positive. Although we disagree in part with the basis of the magistrate judge's decision, we agree with the result he reached. We therefore affirm.

## I.

Doe was received at the Kentucky State Reformatory in January 1989. During his initial medical screening, Doe requested that his blood be tested for the presence of HIV antibodies. The processing nurse denied this request because Doe did not meet the testing criteria established by Kentucky Corrections Cabinet Policy 13.5. That policy provides in relevant part:

TESTING FOR THE PRESENCE OF HIV ANTIBODIES

No routine testing will be undertaken. The physician may order the test for an individual under the following circumstances.

a. The inmate presents clinical symptoms.

b. The inmate provides a presumptive history of exposure.

c. A pregnant inmate reporting a history of intravenous drug use, prostitution or sexual activity with an intravenous drug user.

Doe was transferred to the Luther Luckett Correctional Complex in March 1989. Between that date and March 1991, Doe was treated for a number of ailments by the institution doctor, defendant Dr. Baisas. In March 1991, Doe asked Baisas to test his blood for the presence of HIV antibodies. Doe told Baisas that he wanted to be tested because he had slept with a number of drug-addict prostitutes in Cincinnati prior to his incarceration. On the basis of this disclosure, Baisas ordered that Doe be tested. Doe tested positive for the HIV virus, and was referred to a specialist at an outside hospital for treatment. Further tests indi-

cated that Doe's immune system had seriously deteriorated by the time his infection was discovered.

In April 1991, Doe was transferred back to the Kentucky State Reformatory. During Doe's initial processing, a corrections officer, defendant Sergeant Abbott, asked him a number of routine questions relating to his current medical condition. When Doe refused to answer these questions, Abbott opened Doe's medical records file, which was stamped "confidential." Abbott then briefly discussed Doe's HIV positive status with him. A few other people were in the room during this discussion, but Doe does not know whether these people were able to hear or understand Abbott's remarks about his illness. Doe likewise does not know whether Abbott told anyone about his illness, but speculates that another corrections officer, Lieutenant Godfrey, may have learned of it because Godfrey responded to a grievance that Doe filed about his processing.

In May 1991, Doe filed a pro se civil rights action under 42 U.S.C. § 1983, alleging that the implementation and enforcement of Policy 13.5 violated his rights under the Eighth and Fourteenth Amendments. Doe filed a second § 1983 action in June 1991, alleging that his Fourteenth Amendment "right to privacy" was violated by the Kentucky State Reformatory's initial screening process and by Sergeant Abbott's perusal of his medical records. In each of these actions, Doe named as defendants those prison officials and officers he deemed responsible for the alleged violations of his constitutional rights. Doe sued these persons in their "official and/or personal capacities," and sought declaratory, injunctive, and money damages relief in each action. In October 1991, Doe was released from prison. Doe's two actions thereafter were consolidated, and the parties consented to have a United States magistrate judge preside over the case. Defendants subsequently filed a motion for summary judgment. The magistrate judge granted this motion and dismissed the case. This appeal followed.

## II.

The magistrate judge held that the Eleventh Amendment barred Doe's claims "to the extent that the defendants are sued in their official capacities."[1] The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any foreign State.

This language has been interpreted not literally, but broadly, in light of the historical context in which the Amendment was ratified. *See Hans v. Louisiana*, 134 U.S. 1, 11–20, 10 S.Ct. 504, 505–509, 33 L.Ed. 842 (1890) (recounting the history of the Eleventh Amendment's ratification); *Edelman v. Jordan*, 415 U.S. 651, 660, 94 S.Ct. 1347, 1354, 39 L.Ed.2d 662 (1974) ("The historical basis of the Eleventh Amendment ... represents one of the more dramatic examples of this Court's effort to derive meaning from the document given to the Nation by the Framers nearly 200 years ago.") The Supreme Court thus has held that, under the Eleventh Amendment, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman*, 415 U.S. at 663, 94 S.Ct. at 1355. Moreover, "[i]t is ... well established that even though a State is not named a party to the action, the suit may nonetheless be barred by the Eleventh Amendment[,]" if the suit is somehow deemed to be against the State. *Id.*

Whether a suit against State officials in their official capacity is deemed to be against the State depends on whether the plaintiff seeks "retroactive" or "prospective" relief. *Id.* at 668–69, 94 S.Ct. at 1358–59. Retroactive relief compensates the plaintiff for a past violation of his legal rights. *Id.* at 668, 94 S.Ct. at 1358. This compensation

---

1. The magistrate judge noted that "a state official sued in his official capacity is immune from liability for monetary damages in a § 1983 action," but, as the text indicates, he dismissed not only Doe's official-capacity claims for money damages, but Doe's official-capacity claims for declaratory and injunctive relief as well.

usually takes the form of money damages.[2] Because "a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself[,]" *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985), the State "is the real, substantial party in interest" with regard to a claim for retroactive relief, and thus "is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945). In other words, since a official-capacity claim for retroactive relief is deemed to be against the State whose officers are the nominal defendants, the claim is barred by the Eleventh Amendment.

■ In contrast, prospective relief merely compels the state officers' compliance with federal law in the future. *Edelman*, 415 U.S. at 668, 94 S.Ct. at 1358. In the watershed case of *Ex Parte Young*, 209 U.S. 123, 159–60, 28 S.Ct. 441, 453–54, 52 L.Ed. 714 (1908), the Court explained why claims for prospective relief are deemed to be against only the nominal defendant officers, and not against the State:

The act to be enforced is alleged to be unconstitutional, and if it be so, the use of the name of the State to enforce an unconstitutional act to the injury of complainants is a proceeding without the authority of and one which does not affect the State in its sovereign or governmental capacity. It is simply an illegal act upon the part of a state official in attempting by the use of the name of the State to enforce a legislative enactment which is void because unconstitutional. If the act which the state [officer] seeks to enforce be a violation of the Federal Constitution, the officer in proceeding under such enactment comes into conflict with the superior authority of

that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct.[3]

Thus, official-capacity claims for declaratory relief are not barred by the Eleventh Amendment, even if the officers' future compliance with federal law would have some "ancillary" effect upon the State treasury. *Edelman*, 415 U.S. at 668, 94 S.Ct. at 1358.

■ Here, Doe's claims for money damages against the prison officials in their official capacity are claims for retroactive relief, and hence are barred by the Eleventh Amendment. *Id.* at 663, 94 S.Ct. at 1355–56 ("[A] suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment."). Doe's claims for injunctive and declaratory relief against the defendants in their official capacity, however, do not seek to remedy a past constitutional violation, but instead seek to prevent future ones. (*See* app. at 30–31; 46–47; 59–60.) Since these claims only seek "compliance in the future," they are claims for prospective relief. They accordingly are not deemed to be against Kentucky, and hence are not barred by the Eleventh Amendment. *Edelman*, 415 U.S. at 668, 94 S.Ct. at 1358; *Ex parte Young*, 209 U.S. at 159–60, 28 S.Ct. at 453–54. The magistrate judge erred by holding to the contrary.

■ The material facts relating to Doe's claims for injunctive and declaratory relief are not in dispute, because the parties manifest no real disagreement about the requirements of Policy 13.5 or the circumstances leading to the disclosure to Abbott of Doe's HIV infection.[4] We therefore go on to consider the merits of those claims.

■ Section 1983 provides:

2. In *Cory v. White*, 457 U.S. 85, 90 n. 2, 102 S.Ct. 2325, 2329 n. 2, 72 L.Ed.2d 694 (1982), the Court, however, noted that retroactive relief does not *necessarily* take the form of money damages.

3. Although the quoted language might suggest the contrary, claims for prospective relief still may be brought against the state officers in their official, as opposed to personal, capacity. *Gra-*

*ham*, 473 U.S. at 167 n. 14, 105 S.Ct. at 3106 n. 14.

4. This fact disposes of the lone procedural argument Doe presents, which is that summary judgment for defendants was improperly granted because he had not received answers from two sets of interrogatories at the time of the magistrate judge's decision. *See* Fed.R.Civ.P. 56(c) ("The [summary] judgment sought shall be rendered

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983. Each of the individual defendants is a "person" under § 1983 for purposes of Doe's official-capacity claims for injunctive and declaratory relief. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n. 10, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989). To establish a § 1983 claim against these "persons," Doe must prove that the defendant (1) deprived him of a right secured by the "Constitution and laws of the United States," (2) while acting under color of state law. *Jones v. Duncan*, 840 F.2d 359, 361–62 (6th Cir.1988). The parties do not dispute that defendants were acting under color of Kentucky law when they took the actions in question here. Thus, the validity of Doe's claims depends on whether the defendants violated his constitutional rights.

Doe maintains that the implementation and enforcement of Policy 13.5 deprived him of his rights under the Eighth Amendment. In support of his argument, Doe cites *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). In *Estelle*, the Court held that "deliberate indifference to serious medical needs of prisoners"—or, more precisely, "to a prisoner's serious illness or injury"—"constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Id.* at 104, 105, 97 S.Ct. at 291, 291–92 (citation omitted). Here, it is undisputed that defendants were not aware of the *fact* of Doe's affliction, but he contends they were indifferent to the *possi-*

*bility* of it. Doe thus would have us extend *Estelle* to create an Eighth Amendment guarantee against deliberate indifference to the possibility that a prisoner is seriously ill or injured.

Doe's position is not without support in the case law, albeit by way of analogy. A growing number of courts have held that prison officials violate a prisoner's Eighth Amendment rights if they disregard "a strong likelihood, rather than a mere possibility," that he will attempt to commit suicide. *See, e.g., Hardin v. Hayes*, 957 F.2d 845, 850–51 (11th Cir.1992); *Elliott v. Cheshire County, New Hampshire*, 940 F.2d 7, 10 (1st Cir.1991); *Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir.1988) (collecting early cases in this area), *cert. denied*, 489 U.S. 1068, 109 S.Ct. 1345, 103 L.Ed.2d 814 (1989). Other courts have similarly held with regard to a risk that a prisoner will be assaulted. *See, e.g., McGill v. Duckworth*, 944 F.2d 344, 349 (7th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1265, 117 L.Ed.2d 493 (1992).

We see no principled basis to distinguish between a prison official's deliberate indifference to the strong likelihood that a prisoner will commit suicide or be assaulted and a prison official's deliberate indifference to the strong likelihood that a prisoner is afflicted with a serious illness, such as HIV infection. The Court's holding in *Estelle* suggests that no such principled distinction can be made. In any event, however, it is clear that the defendants in this case were not deliberately indifferent to a strong likelihood that Doe suffered from HIV infection. Defendants implemented Policy 13.5, and adhered to it when Doe requested an HIV test. That policy expressly requires a prisoner who requests an HIV test to be tested if he "provides a presumptive history of exposure." Thus, Policy 13.5 does not manifest "indifference" as to the likelihood that a prisoner is infected with HIV, but indeed makes the availability of HIV testing dependent upon that likelihood. Those prisoners with a strong likelihood of infection are tested upon request; those prisoners with only a relative-

---

forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is

no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.").

ly slight chance of exposure to HIV are not tested. Doe fell into the latter group before he related the story of his associations with prostitutes (which he now says was a fabrication), because he failed to provide prison officials with any information that indicated he might have had a heightened risk of exposure to HIV. Moreover, Doe himself emphasizes (in an attempt to show the folly of Policy 13.5) that his HIV infection was largely asymptomatic, and cites a treating physician's report that Doe suffered from "relatively asymptomatic HIV." Thus, even if we recognized an Eighth Amendment guarantee against deliberate indifference to the serious likelihood that a prisoner is seriously ill, that right would not be violated here.

█ Doe next argues that the implementation and enforcement of Policy 13.5 violated his substantive due process "right to life," because it caused his HIV infection to remain untreated in the interval between the date of his first request for an HIV test and the date he was tested. This delay, Doe points out, has reduced his life expectancy. Doe does not allege that any of the defendants actually intended or knew that the enforcement of the Policy would reduce his life expectancy, but asserts that defendants should have known of the "inevitable danger" that the Policy posed to the inmates. Doe's argument, then, is that defendants negligently reduced his life expectancy.

Doe's argument is foreclosed by the Supreme Court's interpretation of the Fourteenth Amendment's Due Process Clause in *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). That Clause provides that no State shall "deprive any person of life, liberty, or property, without due process of law[.]" *U.S. Const.* amend. XIV, § 1. In *Daniels*, the Court considered a similar substantive due process claim, and stated:

> Historically, this guarantee of due process has been applied to *deliberate* decisions of government officials to deprive a person of life, liberty or property. No decision of this Court before *Parratt [v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) ] supported the view that negligent conduct by a state official, even though

causing injury, constitutes a deprivation under the Due Process Clause.

474 U.S. at 331, 106 S.Ct. at 664–65 (emphasis in original; citations omitted). The Court then "overrule[d] *Parratt* to the extent that it state[d] that mere lack of due care by a state official may 'deprive' an individual of life, liberty, or property under the Fourteenth Amendment." *Id.* at 330–31, 106 S.Ct. at 664–65. Thus, the Court held that the protections of the Due Process Clause are not "triggered by lack of due care by prison officials." *Id.* at 333. Here, defendants did not deliberately decide to reduce Doe's life expectancy, because, though their actions were intentional, they did not know that their actions would have that effect. *Cf. Turner v. Safley*, 482 U.S. 78, 94–99, 107 S.Ct. 2254, 2265–67, 96 L.Ed.2d 64 (1987) (prohibition of inmate marriages "deprived" inmates of liberty to marry). Defendants therefore did not "deprive" Doe of life within the meaning of the Due Process Clause of the Fourteenth Amendment. Doe's substantive due process argument is without merit.

█ Doe further argues that Policy 13.5 violates his equal protection rights because it creates "classes" of inmates for purposes of HIV testing. That Policy 13.5 draws distinctions among those persons who are subject to it, though, does not set it apart from most legal rules. So long as Policy 13.5 does not single out a "suspect class," or impinge "upon a fundamental right explicitly or implicitly protected by the Constitution," it will be upheld if it "rationally furthers" a legitimate State purpose. *San Antonio School District v. Rodriguez*, 411 U.S. 1, 17, 93 S.Ct. 1278, 1288, 36 L.Ed.2d 16 (1973).

No case of which we are aware suggests that persons who do not provide a "presumptive history of exposure" to HIV are a "suspect class," and we decline to create such a rule. Nor can we conclude that Policy 13.5 somehow impinges on the exercise of a "fundamental right." Since "[i]t is not the province of this Court to create substantive constitutional rights in the name of guaranteeing equal protection of the laws[,]" *id.* at 33, 93 S.Ct. at 1296–97, we look to other provisions of the Constitution in considering this question. We think it plain that the actual text of

the Constitution does not guarantee a right to on-demand HIV testing. We think it just as plain that this supposed right is not "'deeply rooted in this Nation's history and tradition[,]'" *Bowers v. Hardwick,* 478 U.S. 186, 192, 106 S.Ct. 2841, 2844, 92 L.Ed.2d 140 (1986) (quoting *Moore v. East Cleveland,* 431 U.S. 494, 503, 97 S.Ct. 1932, 1937–38, 52 L.Ed.2d 531 (1977)), which excludes the possibility that it is a "fundamental" right implicitly guaranteed by the Constitution.

The Policy thus need only "rationally further" a legitimate State purpose to withstand Doe's equal protection challenge. *Rodriguez,* 411 U.S. at 17, 93 S.Ct. at 1288. This test involves only minimal scrutiny of the Policy's classifications; if "there are plausible reasons" for the distinctions it draws, "our inquiry is at an end." *United States Railroad Retirement Bd. v. Fritz,* 449 U.S. 166, 179, 101 S.Ct. 453, 461, 66 L.Ed.2d 368 (1980). Since the Policy arguably ensures that scarce medical resources are used in an efficient manner, it satisfies this test. "It is, of course, 'constitutionally irrelevant whether this reasoning in fact underlay'" the decision to implement the Policy. *Id.* Doe's equal protection argument therefore is without merit.

■ Doe next argues that his "constitutional right to privacy" was violated by the disclosure to Sergeant Abbott of his HIV infection. This argument, however, is foreclosed by the letter and reasoning of our decision in *J.P. v. DeSanti,* 653 F.2d 1080 (6th Cir.1981). There, we considered a claim that the constitutional "privacy" rights of juvenile delinquents were violated by the dissemination of their "social histories" to various governmental, social, and religious agencies. Although we acknowledged that "isolated statements" in *Whalen v. Roe,* 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977), and *Nixon v. Administrator of General Services,* 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977), when read out of context, lent some support to the juveniles' claim, we noted that recognition of a constitutional right of non-

disclosure would force courts to "balanc[e] almost every act of government, both state and federal, against its intrusion on a concept so vague, undefinable, and all-encompassing as individual privacy." 653 F.2d at 1089–90. We further noted that "[i]nferring very broad 'constitutional' rights where the Constitution itself does not express them is an activity not appropriate to the judiciary." *Id.* at 1090. We therefore concluded that "the Constitution does not encompass a general right to nondisclosure of private information." *Id.* Accord *Paul v. Davis,* 424 U.S. 693, 713, 96 S.Ct. 1155, 1166, 47 L.Ed.2d 405 (1976) (rejecting as "far afield from [the privacy] line of decisions" plaintiff's argument that his constitutional right to privacy was violated by police department's disclosure to merchants that plaintiff had been arrested for shoplifting). Doe's privacy argument is indistinguishable from that made in *DeSanti,* so we must reject it.

In summary, then, defendants did not violate Doe's constitutional rights. Doe therefore is not entitled to the declaratory and injunctive relief he seeks.[5]

### III.

It only remains to note that, since defendants' actions did not violate Doe's constitutional rights, the magistrate judge properly dismissed Doe's claims for money damages against defendants in their personal capacities.

**AFFIRMED.**

---

5. Although we reach this conclusion in the context of Doe's claims for declaratory and injunctive relief against the defendants in their official capacities, our reasoning, and thus our conclusion, fully applies to Doe's claims for declaratory and injunctive relief against defendants in their personal capacities.