Susan **SOLIDAY**, As Administratrix and Personal Representative of the Estate of Harry Perkins, deceased; Jeanmarie I. Couchot, As Administratrix and Personal Representative of the Estate of Harry Perkins, deceased, Plaintiffs–Appellants,

v.

**MIAMI COUNTY, OHIO**; Robert Clauson, Miami County Commissioner; Don Hart, Miami County Commissioner; Wade Westfall, Miami County Commissioner; Joseph A. Mahan, Miami County Sheriff's Deputy; Sharon D. Colvin, M.D.; Charles Cox, Jr., Miami County Sheriff; Walter B. Meeker, M.D., Defendants–Appellees.

No. 94–3281.

United States Court of Appeals, Sixth Circuit.

Submitted March 9, 1995.

Decided June 2, 1995.

1160

Scott A. Liberman, Altick & Corwin, Dennis M. Hanaghan (briefed), Edward C. Utacht, II (briefed), Stephen M. McHugh (briefed), Altick & Corwin, Dayton, OH, for plaintiffs-appellants.

Neil Freund (briefed), Lisa A. Hesse, Freund, Freeze & Arnold, Janice M. Paulus, Coolidge, Wall, Womsley & Lombard, Dayton, OH, for Miami County, Ohio, Robert Clauson, Don Hart, Wade Westfall.

Robert P. Bartlett, Jr. (briefed), Janice M. Paulus, Coolidge, Wall, Womsley & Lombard, Dayton, OH, for Joseph A. Mahan, Charles Cox, Jr.

Patrick Kevin Adkinson, John B. Welch (briefed), Jacobson, Maynard, Tuschman & Kalur, Dayton, OH, for Sharon D. Colvin, M.D.

Thomas E. Jenks (briefed), Jenks, Surdyk & Cowdrey, Dayton, OH, for Walter B. Meeker, M.D.

Before: KENNEDY and NORRIS, Circuit Judges; TAYLOR, District Judge.[*]

KENNEDY, Circuit Judge.

On April 4, 1990, Harry Perkins was arrested for breaking and entering and was incarcerated in the Miami County Jail pending trial. Perkins died on April 13, while still in custody. Perkins' representative filed the present action against Miami County, several of its officials, and its sheriff, among others. The suit alleges, *inter alia*, violations of Perkins' constitutional rights under 42 U.S.C. § 1983. Defendants filed motions for summary judgment, which the District Court granted in part, and plaintiff appeals from that decision. We are without jurisdiction to hear the appeal regarding the District Court's decision to grant partial summary judgment on the deliberate indifference to serious medical needs claim, as that is not an appealable order. We do, however, have jurisdiction over the other assignments of error and affirm the District Court on those issues.

## I.

Perkins was diagnosed as HIV positive in 1988. On March 29, 1990, he was released from the Miami Valley Hospital and given prescriptions for various drugs, including AZT and insulin.[1] On April 4, 1990, police officers arrested Perkins for breaking and entering and took him to the Miami County Jail.

As part of the booking procedures, corrections officers ("COs") asked Perkins about his medical condition. He informed them that he had AIDS, but told them he was not taking any medication. The COs who pro-

cessed Perkins described him as looking "weak" and "ill". Perkins lost control of his bowels twice during the booking procedure.

The jail housed Perkins in an isolation cell because he was so frail. COs take roll call of the isolation cells at meal time, and they note whether a prisoner refuses any meal. Perkins did not refuse any of his meals during his stay at the Miami County Jail. COs also observe prisoners in the isolation cells once every hour. According to deposition testimony, Perkins followed a predictable routine while in jail. He mostly slept or smoked, and his conversations with the COs consisted primarily of requests for cigarettes and to have cigarettes lighted.

Perkins did occasionally complain about a sore throat, for which he requested throat lozenges. COs also gave Perkins aspirin or Tylenol. After giving Perkins throat lozenges for several days, CO Kay Stepp suggested that Perkins see the doctor for treatment. With Stepp's assistance, Perkins filled out the appropriate request form. For reasons not indicated in the record, that request form was never passed on to the doctor.

COs had a difficult time awakening Perkins on the morning of April 13. Stepp reported to work at approximately 7:00 a.m. and was informed of that fact. Stepp went to Perkins' cell and tried to rouse him. When she was not able to get a response, she entered his cell. Perkins did not open his eyes and look at Stepp until after she had called him four or five times. After speaking briefly to Stepp, Perkins laid his head back down. Stepp then left the cell.

Shortly thereafter, Joseph Mahan, a deputy sheriff, came to the second floor of the jail, where the isolation cells were located. Stepp informed him of Perkins' condition, and the two decided to move Perkins to the jail's clinic, which is located on the third floor. Perkins was not able to move on his own and had to be carried to the clinic.

After Perkins was moved, someone informed Sheriff Charles Cox of Perkins' con-

[*] The Honorable Anna Diggs Taylor, United States District Judge for the Eastern District of Michigan, sitting by designation.

1. Perkins was apparently diabetic, but he did not inform the jail of that fact, and the record contains no evidence to suggest that defendants had any way of knowing Perkins was a diabetic.

dition and told him that Perkins might need to be sent to the hospital. Cox was also told that, if Perkins did go to the hospital, it might be for a long stay. After receiving this information, Cox commenced proceedings to have Perkins released from custody. At about 9:45 a.m., Cox went to the clinic to observe Perkins, whose condition was deteriorating. Shortly after 10:15 a.m., CO Scott Niesley checked on Perkins and could not get a response. Niesley then summoned another CO, who checked for Perkins' pulse, but was not able to find one. The two COs reported their observations to the jail administration, and the paramedics were summoned. The paramedics arrived at approximately 10:50 a.m. and concluded that Perkins was dead.

Perkins' body was transported to the morgue at Stouder Hospital, where Dr. Walter Meeker conducted a visual examination without removing any of Perkins' clothing. Meeker concluded that Perkins died of multiple systems failure caused by the AIDS virus. Within a few hours of Perkins' death, and before any relatives were contacted, Meeker ordered the cremation of Perkins' body. Meeker did not want any employees handling Perkins' body, and he also feared that burial would spread the AIDS virus through the ground.

Perkins' personal representative filed the present action, alleging violations of Perkins' constitutional rights, as well as of several Ohio state laws. Plaintiff named a number of defendants, including Miami County, its commissioners, its sheriff, numerous corrections officers, Meeker, and Dr. Sharon Colvin, who provided medical services to the jail. All defendants filed motions for summary judgment. The District Court granted several of the motions in their entirety, including those of Meeker, Colvin, and the county commissioners. The lower court, however, granted only partial summary judgment in favor of the remaining defendants. The District Court directed the entry of final judgment under Rule 54(b), and plaintiff now appeals.

## II.

Under Fed.R.Civ.P. 56, summary judgment is to be entered if the moving party demonstrates there is no genuine issue as to any material fact. The moving party has "the burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). In resolving a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party. *Duchon v. Cajon Co.*, 791 F.2d 43, 46 (6th Cir.1986). We review *de novo* a district court's grant of summary judgment.

### A. Miami County's, Cox's, and Mahan's Motions for Summary Judgment

The heart of plaintiff's action are her claims against Miami County and its employees for being deliberately indifferent to Perkins' serious medical needs. In reviewing defendants' motions for summary judgment, the District Court divided Perkins' stay in jail into two time periods: April 4–12 and April 13. The District Court concluded that, as a matter of law, no deliberate indifference occurred during the first time period, but that plaintiff had presented a triable issue of fact as to defendants' conduct on the day Perkins died. Plaintiff now appeals the grant of summary judgment as to the first time period.

Because the District Court granted only partial summary judgment, we must first determine whether we have jurisdiction before we begin a review of the merits. The Federal Rules of Civil Procedure provide that

> [w]hen more than one claim for relief is presented in an action, ... or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment....

Fed.R.Civ.P. 54(b). In the present case, the District Court paved the way for an appeal by entering a final judgment as to defendants Colvin, Meeker, Clauson, Hart, and Westfall, as well as to all defendants involved in the deliberate indifference claim for the

period of April 4–12. The District Court, however, retained jurisdiction over the defendants involved with the April 13 activities.

This court has reviewed the purpose behind Rule 54(b) on several occasions:

> Rule 54(b) was designed to facilitate the entry of an order of final judgment in a multi-claim/multi-party action where the parties demonstrated a need for making review available on some of the claims or parties before entry of final judgment as to all.... The advent of the relaxed joinder provisions in the Federal Rules of Civil Procedure made necessary a revision of what could be considered a "judicial unit" for purposes of appellate jurisdiction. Sound judicial administration warrants allowing appeal on some claims or parties before the entire case is finally adjudicated, but it does not warrant blurring the concept of finality as to a single claim or as to one party.... Rule 54(b) therefore does not countenance piecemeal review of a claim. Nor is Rule 54(b) to be used indiscriminately....

*Coalition For Equitable Minority Participation v. Metropolitan Government,* 786 F.2d 227, 230 (6th Cir.1986) (citations and footnote omitted).

██ Plaintiff has not appealed the summary judgment in favor of Clauson, Hart, and Westfall, so we need not consider them. Based upon the above standard, the District Court was correct to enter final judgment as to Colvin and Meeker. The claims against them were distinct and separable from the claims against the other defendants, and Colvin and Meeker are not involved in any remaining claim. Accordingly, we have jurisdiction to review the summary judgments against them and will do so.

Because we entertained significant doubts regarding the Rule 54(b) certification as to Miami County, Cox, and Mahan, we issued an order to show cause requesting that the parties specifically address the issue of whether the District Court's division of the claim of deliberate indifference into two time periods permitted the entry of final judgment

as to one time period. Plaintiffs-appellants [2] have filed a response essentially reiterating the reasoning of the District Court. The District Court found that considerations of judicial economy resulted in a conclusion of no just reason for delay.

According to the District Court and plaintiffs, a delay could result in two repetitive trials. The District Court would first have to hold a trial on the April 13 activities, and then enter final judgment. If, at that time, the Sixth Circuit found error in the grant of partial summary judgment, the District Court would then have to hold a second trial on the April 4–12 period, which would involve almost the same evidence as the first trial. This reasoning, however, has a flip side: the result of the first trial may obviate the need for this Court to ever address the propriety of the grant of partial summary judgment. To address it now, then, might simply be an advisory opinion.

██ Our analysis is also guided by a previous decision of this court in which we declared:

> We think judicial economy will best be served by delaying appeal until all the issues can be confronted by this Court in a unified package. This is particularly true where the adjudicated and pending claims are closely related and stem from essentially the same factual allegations.

*Solomon v. Aetna Life Ins. Co.,* 782 F.2d 58, 62 (6th Cir.1986). We think this reasoning applies with even greater force to the present situation, where the District Court granted summary judgment on only part of a single claim. Dividing one claim into two parts does not create the "multiple claim" scenario anticipated by Rule 54(b). Instead, it is simply a means to circumvent the final judgment rule and attempt to permit an otherwise improper interlocutory appeal. The District Court erred in entering final judgment on one segment of a single claim. Accordingly, we are without jurisdiction to review plaintiff's claims of error with respect to Miami County, Cox, and Mahan.

**2.** Appellees have not filed a response in the time since we issued the order to show cause. Because the law in this area is well-settled and clear, we see no need to wait any longer before issuing our opinion.

### B. Colvin's Motion for Summary Judgment

■ Pursuant to a contract, Colvin provides medical services to the Miami County Jail. As part of those services, Colvin is supposed to conduct sick call at the jail once or twice a week. Plaintiff contends that Colvin did not conduct the requisite number of sick calls, and thus, never saw Perkins. Accordingly, plaintiff's claim is one of medical malpractice against Colvin. This claim is governed by Ohio law.

The District Court concluded that expert testimony was required to fulfill plaintiff's burden of proof and that plaintiff had not presented sufficient proof on this issue. Consequently, the lower court granted Colvin's motion for summary judgment. We find it unnecessary to review this reasoning, as Colvin's motion can be resolved on a simpler ground.

The record contains absolutely no evidence that Colvin ever refused to treat Perkins or that she provided inadequate treatment. Indeed, the record contains absolutely no evidence to show that Colvin even knew Perkins, or any seriously ill inmate, was in jail. Without that knowledge, Colvin cannot be guilty of malpractice. Even if Colvin was not physically present at the jail the minimum number of times required by her contract, there is no evidence that she would have treated Perkins had she been there. ·Sick call at the jail was just that—the doctor held office hours at the clinic and saw prisoners who indicated they were ill. She was not required to go from cell to cell examining the inmates. Perkins filled out only one request to see the doctor, and that was at the insistence of a CO. The record shows that the slip was never passed on to the doctor. Thus, Colvin would not have seen Perkins even if she were at the jail during his stay there. Accordingly, the District Court did not err in granting Colvin's motion for summary judgment.

### C. Meeker's Motion for Summary Judgment

Meeker, the coroner for Miami County, ordered the cremation of Perkins' body two to five hours after his death. Plaintiff contends that Perkins' family has a constitutional right to receive Perkins' body and arrange for its burial. Plaintiff also alleges a similar right under Ohio law. The District Court found that Meeker was protected by qualified immunity from the former charge and declined to exercise its supplemental jurisdiction over the latter claim.

■ Government officials may be entitled to qualified immunity from civil suits for damages arising out of their performance of their official duties. The key issue in analyzing a claim of qualified immunity is whether the defendant's alleged conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

■ Plaintiff alleges that Meeker's actions violated the constitutional rights recognized by this court in *Brotherton v. Cleveland,* 923 F.2d 477 (6th Cir.1991) (*Brotherton I*). In *Brotherton I,* we held that the aggregate of rights granted by the state of Ohio to the spouse of a deceased person rises to the level of a constitutionally protected right in the body of the deceased. *Id.* at 482. After issuing its decision in *Brotherton I,* this Court remanded the case for further proceedings. Upon remand, the district court found that the defendants were protected by qualified immunity. This Court affirmed, stating that the rights articulated in *Brotherton I* were not clearly established until that decision. *Brotherton v. Cleveland,* 968 F.2d 1214 (6th Cir.1992) (*Brotherton II*). The events here occurred before *Brotherton I* was decided. The District Court held that Meeker was protected by qualified immunity. This decision is correct, and we therefore affirm it.

■ After reaching this decision, the District Court declined to exercise its supplemental jurisdiction to hear plaintiff's state law claim against Meeker. We review the District Court's decision on this issue for an abuse of discretion. *Landefeld v. Marion General Hospital,* 994 F.2d 1178, 1182 (6th Cir.1993). We have defined an abuse of discretion as a "definite and firm conviction that

the trial court committed a clear error of judgment." *Logan v. Dayton Hudson Corp.*, 865 F.2d 789, 790 (6th Cir.1989).

The Supreme Court has declared that "a federal court has jurisdiction over an entire action, including state-law claims, whenever the federal-law claims and state-law claims in the case 'derive from a common nucleus of operative fact' and are 'such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding.'" *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 349, 108 S.Ct. 614, 618, 98 L.Ed.2d 720 (1988) (quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)).

▆▆▆ Plaintiff's state law claim against Dr. Meeker is distinct and separable from the federal claims over which the District Court retained jurisdiction. Plaintiff's remaining claims accuse Miami County and two of its employees at the jail of being deliberately indifferent to Perkins' serious medical needs. Plaintiff's state law claim against Meeker deals with various statutory provisions regarding the duties of coroners. The District Court did not abuse its discretion in refusing to hear that claim.

### D. Plaintiff's Motion to Amend

Plaintiff's original complaint was filed on April 9, 1991. On October 6, 1992, she moved for leave to amend her complaint. Plaintiff's original complaint referenced several unnamed deputies and COs as "John and Jane Does." The proposed amended complaint provided the names and addresses of these Does and also raised a breach of contract action against Dr. Colvin. The District Court denied leave to amend. Plaintiff seeks to appeal that decision.

▆▆▆▆ Plaintiff's request to amend her complaint to add the names of the John and Jane Does relates to her claim of deliberate indifference to Perkins' serious medical needs. A denial of leave to amend is generally not an appealable order. *Caldwell v. Moore,* 968 F.2d 595, 598 (6th Cir.1992). Such an order becomes appealable only after the entry of final judgment on that claim. *Id.* As we discussed above, no final judgment has been appropriately entered regarding plaintiff's claim of deliberate indifference. Accordingly, we have no jurisdiction to review this portion of the District Court's order.

▆▆▆ A final judgment does exist regarding Dr. Colvin, which gives us jurisdiction to review this aspect of the District Court's denial of leave to amend. We review the District Court's decision for an abuse of discretion. *Hoover v. Langston Equip. Assoc.,* 958 F.2d 742, 745 (6th Cir.1992). In the proposed amended complaint, plaintiff argued that Perkins was a third-party beneficiary to the contract between Colvin and Miami County and that she was therefore entitled to bring a breach of contract claim against Colvin on Perkins' behalf. The District Court declined to exercise supplemental jurisdiction over this claim, stating that it raised a novel issue of state law, which was more properly raised in the Ohio state courts.

▆▆▆ In our above discussion of Meeker's motion for summary judgment, we set out the standards for reviewing a district court's refusal to exercise its supplemental jurisdiction. We cannot say that the District Court abused its discretion, as the breach of contract claim against Colvin did not arise out of a "common nucleus of operative facts" with plaintiff's claims against the County and its employees over the events of April 13.

### III.

For the foregoing reasons, we lack jurisdiction to review the partial summary judgment in favor of Miami County, Cox, and Mahan. We do, however, affirm the District Court's grant of summary judgment in favor of Meeker and Colvin.