106 F.3d 702
 65 USLW 2527
 Promise DOE; Jane Roe; Kimberly C. and Russ C.; and Small
World Ministries, Inc., Plaintiffs-Appellants,
v.
Donald SUNDQUIST, Governor of the State of Tennessee, in his
official capacity; Charles Burson, Attorney General of the
State of Tennessee, in his official capacity; and Linda
Rudolph, in her official capacity as the Commissioner of the
Department of Human Services for the State of Tennessee,
Defendants-Appellees.
 No. 96-6197.
 United States Court of Appeals,
Sixth Circuit.
 Argued Dec. 2, 1996.
Decided Feb. 11, 1997.
 
 Larry L. Crain (argued and briefed), Long, Seneff & Mellow, Brentwood, TN, Kevin H. Theriot, The American Center for Law & Justice of Tennessee, Brentwood, TN, for Promise Doe, Jane Roe, Small World Ministries, Inc.
 Larry L. Crain, Long, Seneff & Mellow, Brentwood, TN, for Kimberly C., Russ C.
 Dianne Stamey Dycus, Asst. Attorney Gen. (argued and briefed), Office of the Attorney General, Nashville, TN, for Don Sundquist, Charles W. Burson, Linda Rudolph.
 Harlan Dodson, III, Anne C. Martin, Julie K. Sandine, Dodson, Parker, & Behm, Nashville, TN, Robert D. Tuke, Tuke Yopp & Sweeney, Nashville, TN, Frederick F. Greenman, Jr., Deutsch, Klagsbrun & Blasband, New York City (briefed), for Amici Curiae Teresa Evetts Horton and Jim Holcomb.
 David M. McConkie, Merrill F. Nelson (briefed), Kirton & McConkie, Salt Lake City, for Amicus Curiae National Council for Adoption.
 Before: MARTIN, Chief Judge; ENGEL and COLE, Circuit Judges.
 ENGEL, Circuit Judge.
 
 
 1
 Two birth mothers (Promise Doe and Jane Roe), an adoptive couple (Kimberly C. and Russ C.), and a nonprofit organization licensed by Tennessee as a child-placing agency (Small World Ministries, Inc.) appeal the district court's denial of their motion for a preliminary injunction to block the enforcement of Tennessee's new statute governing the disclosure of adoption records. The plaintiffs allege that the statute violates both the U.S. Constitution and the Tennessee Constitution. We affirm the district court's denial of the preliminary injunction, and on the merits of the case, we dismiss the federal claims and decline to exercise jurisdiction over the state claims.
 
 I.
 
 2
 From 1951 to 1996, sealed adoption records were available in Tennessee only upon court order that disclosure was "in the best interest of the child or of the public." Tenn.Code Ann. § 36-1-131 (repealed). Under a recently enacted statute that was to go into effect July 1, 1996,
 
 
 3
 (A) All adoption records ... shall be made available to the following eligible persons:
 
 
 4
 (i) An adopted person ... who is twenty-one (21) years of age or older ...;
 
 
 5
 (ii) The legal representative of [such] a person....
 
 
 6
 (B) Information ... shall be released ... only to the parents, siblings, lineal descendants, or lineal ancestors, of the adopted person ..., and only with the express written consent [of] the adopted person....
 
 
 7
 Id. § 36-1-127(c)(1). The new law also provides for a "contact veto," under which a parent, sibling, spouse, lineal ancestor, or lineal descendant of an adopted person may register to prevent contact by the adopted person. Id. § 36-1-128. The contact veto also can prohibit the adopted person from contacting any spouse, sibling, lineal descendant, or lineal ancestor of the person registering the veto. Id. § 36-1-130(a)(6)(A)(i). A violator of the contact veto provision is subject to civil and criminal liability. Id. § 36-1-132. Before disclosure of the identity of an adopted person's relatives is made, the state "shall conduct a diligent search" for the relatives to give them a chance to register for the veto. Id. § 36-1-131. In any event, the relatives of an adopted person can veto only contact, not disclosure of their identities.
 
 
 8
 Doe's birth child is approximately six years old. One of the adoptive children of Kimberly C. and Russ C. is no older than six, and the other is no older than two. Small World started in 1985, and apparently none of the children it has placed will turn twenty-one within the next few years. Roe's birth child is over twenty-one and has tried to ascertain her identity.
 
 
 9
 Six days before the statute was to go into effect, the plaintiffs filed this suit in district court. The court granted a temporary restraining order preventing state officials from enforcing the statute. On August 23, the court denied the plaintiffs' motion for a preliminary injunction and motion to consolidate the preliminary injunction hearing with a hearing on the merits. The plaintiffs appealed, and a Sixth Circuit panel granted a stay prohibiting enforcement of the law pending an expedited appeal.
 
 II.
 
 10
 We review the district court's denial of a preliminary injunction for abuse of discretion. Dayton Area Visually Impaired Persons, Inc. v. Fisher, 70 F.3d 1474, 1480 (6th Cir.1995), cert. denied, --- U.S. ----, 116 S.Ct. 1421, 134 L.Ed.2d 545 (1996). The court evaluated the plaintiffs' motion under the proper framework, considering (1) the likelihood of success on the merits; (2) whether the plaintiffs would suffer irreparable injury without a preliminary injunction; (3) whether other parties would suffer substantial harm from a preliminary injunction; and (4) the public interest. Id.
 
 
 11
 The likelihood of success of the plaintiffs' constitutional challenge is the most hotly debated of the four factors. One obstacle in the plaintiffs' path is a potential lack of standing. The question of standing is subject to dispute, but we see no need to resolve it because even if the plaintiffs do have standing to contest the constitutionality of § 36-1-127(c), their challenge will almost certainly fail.
 
 
 12
 The plaintiffs claim that the new law violates their right of privacy under the United States and Tennessee Constitutions. They argue that the "zone of privacy" established in Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), now encompasses familial privacy, reproductive privacy, and privacy against disclosure of confidential information and that the new statute violates each of these three. We will consider these theories in turn, but first we note our skepticism that information concerning a birth might be protected from disclosure by the Constitution. A birth is simultaneously an intimate occasion and a public event--the government has long kept records of when, where, and by whom babies are born. Such records have myriad purposes, such as furthering the interest of children in knowing the circumstances of their birth. The Tennessee legislature has resolved a conflict between that interest and the competing interest of some parents in concealing the circumstances of a birth. We are powerless to disturb this resolution unless the Constitution elevates the right to avoid disclosure of adoption records above the right to know the identity of one's parents.
 
 
 13
 First, the plaintiffs cite Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923), as protecting familial privacy. Dicta in Meyer noted that the Due Process Clause guarantees the right to "marry, establish a home and bring up children." Id. at 399, 43 S.Ct. at 626. Nothing in the Tennessee statute infringes on that right. Under the new scheme, people in Tennessee are still free not only to marry and to raise children, but also to adopt children and to give children up for adoption. We find that if there is a federal constitutional right of familial privacy, it does not extend as far as the plaintiffs would like.
 
 
 14
 Second, the plaintiffs claim that their right to reproductive privacy, as established in Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), and its progeny, is violated by the Tennessee statute. The freedom to make decisions about adoption, they argue, is sufficiently analogous to the freedom to decide whether to carry a baby to term to justify an extension of Roe. Even should it ultimately be held some day that the right to give up a baby for adoption or to adopt a child is protected by the Constitution, such a right would not be relevant to this case. Because the challenged law does not limit adoptions, cases striking down laws restricting abortions are not analogous. And even assuming that a law placing an undue burden on adoptions might conceivably be held to infringe on privacy rights in the Roe realm, much as laws placing "undue burden[s]" on abortions are unconstitutional under Planned Parenthood v. Casey, 505 U.S. 833, 874-79, 112 S.Ct. 2791, 2818-22, 120 L.Ed.2d 674 (1992), § 36-1-127 does not unduly burden the adoption process. Whether it burdens the process at all is the subject of great dispute in two briefs submitted to this court by amici curiae. Any burden that does exist is incidental and not "undue." See Casey, 505 U.S. at 878, 112 S.Ct. at 2821 (equating "undue burden" with "substantial obstacle").
 
 
 15
 Third, the plaintiffs claim that the law violates their right to avoid disclosure of confidential information. They rely on a dictum in Whalen v. Roe, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977), that describes one type of privacy right as "the individual interest in avoiding disclosure of personal matters." Id. at 599, 97 S.Ct. at 876. This right has not been fleshed out by the Supreme Court. The plaintiffs' argument that it should be extended to cover this case runs counter to our decisions in J.P. v. DeSanti, 653 F.2d 1080 (6th Cir.1981), and Doe v. Wigginton, 21 F.3d 733 (6th Cir.1994). In DeSanti, we read the Whalen dicta narrowly, 653 F.2d at 1088-89, and held that "the Constitution does not encompass a general right to nondisclosure of private information." Id. at 1090. We concluded that no constitutional right was violated by the post-adjudication dissemination of juvenile court records. Wigginton, which held that the disclosure of an inmate's HIV status was not unconstitutional, reaffirmed the nonexistence of the right claimed by the plaintiffs here. 21 F.3d at 740. The plaintiffs distinguish these cases by arguing that the information released in each did not implicate fundamental rights. As discussed above, even if a court were someday to recognize adoption-related rights as fundamental, such recognition would not be relevant to this case because the challenged part of the new Tennessee law does not directly regulate when, how, or by whom a child may be adopted.
 
 
 16
 The plaintiffs assert that the Tennessee Constitution provides broader protection of privacy rights than does the U.S. Constitution. If this is so, see Davis v. Davis, 842 S.W.2d 588, 600 (Tenn.1992); Campbell v. Sundquist, 926 S.W.2d 250, 261 (Tenn.Ct.App.1996), plaintiffs present a cogent reason why resort should in all events first be made to Tennessee courts for the resolution of their dispute.
 
 
 17
 In their amended complaint, the plaintiffs also allege that § 36-1-127 violates their right to equal protection under the United States and Tennessee Constitutions, violates their right to freedom of conscience under the Tennessee Constitution, and constitutes a breach of contract by the state of Tennessee. The plaintiffs do not discuss these theories in their briefs on appeal. While they are entitled to what comfort they may obtain from Tennessee courts on the Tennessee claims, we find just as little likelihood of success under the federal equal protection theory as we do under the "right to privacy" theory.
 
 
 18
 In sum, we find that the plaintiffs' likelihood of success on the merits of their federal constitutional claims is so remote as to make the issuance of preliminary injunctive relief wholly inappropriate.
 
 
 19
 The element of public interest also weighs against enjoining enforcement of the Tennessee statute. The statute appears to be a serious attempt to weigh and balance two frequently conflicting interests: the interest of a child adopted at an early age to know who that child's birth parents were, an interest entitled to a good deal of respect and sympathy, and the interest of birth parents in the protection of the integrity of a sound adoption system. It is an issue of peculiar relevance to the primary police functions of the state as reserved to Tennessee under the Tenth Amendment. See United States v. Lopez, 514 U.S. 549, ----, 115 S.Ct. 1624, 1634, 131 L.Ed.2d 626 (1995). Another aspect of public interest favoring the defendants' position is the interest of comity between states and federal governments, including the interest of the state in having the first opportunity to construe its own constitution and laws.
 
 
 20
 We are mindful that even when a plaintiff's probability of success on the merits of a claim is not very high, a preliminary injunction may be appropriate if the plaintiff is in serious danger of irreparable harm absent an injunction. Thus we have observed that the degree of likelihood of success that need be shown to support a preliminary injunction varies inversely with the degree of injury the plaintiff might suffer. Friendship Materials, Inc. v. Michigan Brick, Inc., 679 F.2d 100, 105 (6th Cir.1982). We are particularly sympathetic to the plight of the Roe birth mother, whose identity may be disclosed imminently to her biological child if the statute is upheld. The likelihood of irreparable harm does not, however, control completely; other factors must still be weighed. Here the plaintiffs' ultimate chance of success on their federal claims is so slim as to be entirely ephemeral. We must observe also that the plaintiffs have always had the opportunity to present their state claims to the Tennessee courts, and if there is any danger of loss in their having failed earlier to pursue that avenue, the cause of it lies in their own hands.
 
 
 21
 * * * * * *
 
 
 22
 Normally, we limit our review of a district court's decision to grant or deny a preliminary injunction to a consideration of whether the district court abused its discretion, leave it at that, and remand to the district court for further proceedings. Tate v. Frey, 735 F.2d 986, 990 (6th Cir.1984). We generally decline comment on the merits of the case to the extent possible because we recognize that factual issues are fleshed out and legal issues are more fully argued once litigation passes the preliminary stage. Christian Schmidt Brewing Co. v. G. Heileman Brewing Co., 753 F.2d 1354, 1356 (6th Cir.1985); SEC v. Senex Corp., 534 F.2d 1240, 1241 (6th Cir.1976). This prudential limitation on appellate review goes hand in hand with the axiom that we do not consider issues not passed upon by the district court. Pinney Dock & Transport Co. v. Penn Cent. Corp., 838 F.2d 1445, 1461 (6th Cir.1988). That axiom is not jurisdictional, however. If an issue unaddressed by the district court "is presented with sufficient clarity and completeness and its resolution will materially advance the progress" of the litigation, id., we have often chosen to consider that issue, e.g., Allen v. Diebold, Inc., 33 F.3d 674, 676 (6th Cir.1994). The sort of judicial restraint that is normally warranted on interlocutory appeals does not prevent us from reaching clearly defined issues in the interest of judicial economy. Alexander v. Aero Lodge No. 735, 565 F.2d 1364, 1370 (6th Cir.1977).
 
 
 23
 We have never applied the Pinney Dock exception precisely to an appeal from the grant or denial of a preliminary injunction, but we find that the principle applies squarely to such a case when the legal issues have been briefed and the factual record does not need expansion. Other appeals courts have readily addressed the merits of cases on interlocutory appeal from the denial of a preliminary injunction. E.g., Illinois Council on Long Term Care v. Bradley, 957 F.2d 305, 310 (7th Cir.1992) ("Since plaintiffs cannot win on the merits, there is no point in remanding the case for further proceedings."); see also 11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2962, at 434-35 (1995) ("If an interlocutory appeal is taken, the appellate court ... under unusual circumstances may dismiss the action if an insuperable obstacle to awarding relief is apparent."). Indeed, the U.S. Supreme Court has noted that one purpose of interlocutory appeals is "to save parties the expense of further litigation." Thornburgh v. American College of Obstetricians & Gynecologists, 476 U.S. 747, 756, 106 S.Ct. 2169, 2176, 90 L.Ed.2d 779 (1986), overruled in part on other grounds by Planned Parenthood v. Casey, 505 U.S. 833, 870, 112 S.Ct. 2791, 2816-17, 120 L.Ed.2d 674 (1992). In Thornburgh, the Court approved of the Third Circuit's holding that several provisions of a new Pennsylvania law were unconstitutional even though only the district court's denial of a preliminary injunction, not the merits of the case, had been before the court of appeals. Id. at 757, 106 S.Ct. at 2177. Although the advantage in deciding the merits of a case earlier may be slightly diminished when that decision is that a statute is not unconstitutional, the "rule of orderly judicial administration," id., invoked by the Court in Thornburgh applies here as well.
 
 
 24
 We remand to the district court to dismiss the plaintiffs' complaint with prejudice with respect to the federal constitutional issues but without prejudice to any right to seek relief from the Tennessee courts on the non-federal issues. From respect for the right of a state court system to construe that state's own constitution and adoption statute, we choose not to rule on the merits of the state claims.[1]
 
 
 25
 The district court had subject-matter jurisdiction over the state claims under 28 U.S.C. § 1367(a), which provides for supplemental jurisdiction over "claims that are so related to claims in the action within [original] jurisdiction that they form part of the same case or controversy...." A district court may decline to exercise supplemental jurisdiction over a claim if
 
 
 26
 (1) the claim raises a novel or complex issue of State law,
 
 
 27
 (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
 
 
 28
 (3) the district court has dismissed all claims over which it has original jurisdiction, or
 
 
 29
 (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.
 
 
 30
 Id. § 1367(c).
 
 
 31
 As the first tribunal to address the merits of this case, we do not sit in our usual procedural posture of reviewing the district court's exercise of supplemental jurisdiction for abuse of discretion. See Soliday v. Miami County, 55 F.3d 1158, 1164 (6th Cir.1995). We must decide ourselves whether to exercise such jurisdiction. We decline to exercise supplemental jurisdiction, finding that at least one of the § 1367(c) factors applies, namely, subsection (c)(1). Concerns of comity also support our decision. See Castellano v. Board of Trustees, 937 F.2d 752, 758 (2d Cir.1991). This case would have been better brought in state court in the first place, and we deem it prudent to allow the Tennessee courts to decide the purely state law issues.
 
 III.
 
 32
 For the foregoing reasons, we AFFIRM the district court's denial of the plaintiffs' motion for a preliminary injunction. On the merits of the case, we DISMISS the plaintiffs' claims insofar as they rely on federal law, and we decline to exercise supplemental jurisdiction over the claims insofar as they rely on state law. The stay pending appeal is VACATED and the case is REMANDED to the district court for dismissal of the complaint and other proceedings consistent with the decision of this court.
 
 
 
 [1]
 We recognize that this case lends itself in some ways to abstention under the doctrine of Railroad Commission v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), in which the Supreme Court held that if clarification of state law might obviate the need for a federal court to determine a federal constitutional question, the federal court should abstain until the state law question is settled. The federal constitutional questions in this case, however, are not so difficult that anything would be gained by dodging them. While we have the judicial power to resolve these issues, we may as well decide them