**PAUL P., et al., Plaintiffs,**

v.

**Peter VERNIERO, Attorney General of New Jersey, et al., Defendants.**

**Civil Action No. 97–2919(JEI).**

United States District Court, D. New Jersey.

Oct. 29, 1997.

Michael Buncher, Susan L. Reisner, Public Defender, Office of Public Defender, Special Hearings Unit, Trenton, NJ, for plaintiffs.

Joseph L. Yannotti, Rhonda S. Berliner-Gold, Office of NJ Atty. Gen., Trenton, NJ, Betsy L. Phillips, Atlantic County Prosecutor, Mays Landing, NJ, Nancy K. Lotstein, Gloucester County Prosecutor, Woodbury, NJ, Susan A. Greco, Passaic County Prosecutor, Paterson , NJ, Maureen O'Brien, Union County Admin., Elizabeth, NJ, for defendants.

## OPINION

IRENAS, District Judge.

The Third Circuit recently found that the community notification provisions of New Jersey's sex offender community notification law, N.J.S.A. §§ 2C:7–1 *et seq.,* commonly referred to as "Megan's Law," do not constitute punishment for purposes of the Ex Post Facto and Double Jeopardy Clauses and held that federal due process requires the State to bear the burden of persuasion by clear and convincing evidence in Megan's Law classification proceedings. *E.B. v. Verniero,* 119 F.3d 1077 (3d Cir.1997). After the Third Circuit's ruling, we certified a plaintiff class of sex offender registrants in this case and asked defendants, the Attorney General of New Jersey and the State's twenty-two county prosecutors, to file a motion for summary judgment in light of the Third Circuit's holding. Having now considered this motion and the papers submitted by the parties,[1] we will grant summary judgment to the defendants on plaintiffs' Double Jeopardy Clause and cruel and unusual punishment claims. The Third Circuit's opinion disposes of these issues and plaintiffs do not attempt to argue that summary judgment should not be granted. We will also grant summary judgment to the defendants on plaintiffs' privacy claims

---

1. We have also considered a letter brief in favor of the defendants' motion for summary judgment submitted by the United States.

because we find that plaintiffs' constitutional rights to privacy are not violated by the community notification provisions of Megan's Law. We will deny, however, defendants' motion for summary judgment on plaintiffs' due process claim because we find that a genuine issue of material fact exists as to whether or not any class members may be deprived of their due process rights under the New Jersey Supreme Court's recently promulgated redetermination hearing procedures.

## I. BACKGROUND

### A. *Registration and Tier Classification Scheme of Megan's Law* [2]

Megan's Law requires convicted sex offenders to register with local law enforcement after completing their sentences. N.J.S.A. 2c:7-2b(1). The registrant must give the local police the following information upon registration: name, social security number, age, race, sex, date of birth, height, weight, hair and eye color, address of legal residence, and date and place of employment. N.J.S.A. 2C:7-4b(1). Registration information must be updated every ninety days and upon a registrant's move to a new municipality. N.J.S A. 2C:7-2d–2e. The registrants' information is not open to the public; however, it is received by certain defined classes of people depending on the classification tier assigned to each registrant.

After registration, each convicted sex offender must be classified to assess the risk of reoffense and the need for community notification N.J.S.A. 2C:7-8d(1). The prosecutor of the county where he resides and the prosecutor of the county in which he was convicted jointly analyze the registration information in consideration of certain set criteria provided by Megan's Law guidelines. *See* N.J.S.A. 2c:7-8b. Based upon this analysis, the county prosecutors determine whether registrants pose a low (tier-one), moderate (tier-two) or high (tier-three) reoffense risk. N.J.S.A. 2C:7-8c. All registrants automatically receive at least a tier-one classification.

Tier-one notification requires the county prosecutors to notify only law enforcement agencies likely to encounter the registrant. N.J.S.A. 2C:7-8c(1). Tier-two notification requires the county prosecutors to notify, in addition to law enforcement agencies, registered schools, day care centers, summer camps and other children's or women's organizations giving care to potential victims in areas where the registrant is likely to be encountered. N.J.S.A. 2C:7-8c(2). Tier-three requires the county prosecutors to notify, in addition to those organizations notified under the lower two-tiers, all members of the public likely to encounter the registrant. N.J.S.A. 2C:7-8c(3). Tier-three notification generally extends to members of the registrant's surrounding neighborhood and other places he is likely to frequent. The breadth of notification is left to the discretion of the two county prosecutors, in accordance with Megan's Law guidelines promulgated by the Attorney General. *See* "Guidelines for Law Enforcement for Notification to Local Officials and/or the Community of the Entry of a Sex Offender into the Community," June 1, 1996 (*cited* in *E.B.*, 119 F.3d at 1083).

In *Doe v. Poritz,* 142 N.J. 1, 662 A.2d 367 (1995), the New Jersey Supreme Court modified the tier classification process to ensure registrants an opportunity to challenge their tier level. After *Doe,* potential tier-two or tier-three sex offenders must be provided prior notice and an opportunity to be heard at a classification determination hearing. *Doe,* 662 A.2d at 382. At a determination hearing, a registrant is entitled to present three judicially-defined types of challenges to his tier designation. *See In re G.B.,* 147 N.J. 62, 685 A.2d 1252 (1996).

### B. *Procedural History*

On June 16, 1997, four sex offender registrants under Megan's Law filed a joint complaint and an application for a temporary restraining order and preliminary injunction on behalf of themselves as representatives of a class of tier-two and tier-three registrants

---

**2.** For a fuller description of the intricacies of the tier classification scheme of Megan's Law, see

Part II of *E.B.,* 119 F.3d at 1081–87.

convicted after the passage of Megan's Law.[3] The complaint seeks to enjoin the dissemination of community notification and tier classification proceedings under Megan's Law. It alleges that the registration and notification process for tier-two and tier-three registrants . violates the class's constitutional rights to due process, privacy, and the rights to be free from double jeopardy and cruel and unusual punishment. The Attorney General of New Jersey and the State's twenty-two county prosecutors are named as defendants.

On June 26, 1997, this Court denied the motion for preliminary injunction as to the named plaintiffs. Subsequently, we dismissed the claims of plaintiffs "Quincy Q" and "Steven S" for failure to state a justiciable claim.[4] Oral argument on plaintiffs' motion for class certification was scheduled for August 22, 1997.

Two days prior to oral argument, on August 20, 1997, in a similar action involving sex offenders whose offenses were committed prior to the passage of Megan's Law, the Third Circuit found that the notification requirements of Megan's Law do not constitute punishment for purposes of the Ex Post Facto and Double Jeopardy clauses. The Third Circuit also found that constitutional due process required modification to the tier classification procedure and held that the State would now need to bear the burden of persuasion by clear and convincing evidence. *E.B.*, 119 F.3d 1077.

Oral argument on class certification took place as scheduled on August 22, 1997. On August 25, 1997, this Court certified a plaintiff class consisting of all persons required to register as sex offenders under Megan's law whose offenses were committed on or after October 31, 1994; who have been or will be classified as a tier-two or tier-three offender

by a defendant county prosecutor and who have not been classified as a tier-one offender by a state court; who have no other Megan's Law action currently pending before the United States Court for the District of New Jersey; who are not barred from joining the class by the doctrines of issue or claim preclusion, or by any doctrine of abstention, in particular the doctrine of Rooker–Feldman;[5] and who have been classified as a tier-two or tier-three offender and whose certification process has not already been completed.

The Supreme Court of New Jersey, upon the Attorney General's application, issued an Order on September 10, 1997, which amended the procedure applicable to tier classification and notification determinations under Megan's Law. The Order declared that "the State has the burden of persuasion to establish the registrant's tier classification and notification by clear and convincing evidence[.]" Order of the Supreme Court of New Jersey, September 10, 1997. Buncher Cert., Sept. 29, 1997, at Exh. 3. The New Jersey Supreme Court thus conformed classification and notification procedures with the *E.B.* due process requirements for initial classification hearings. The Order also declared that registrants who underwent determination hearings under the pre-*E.B.* burden of proof standards "shall through appropriate notice be granted the opportunity to seek redetermination of their tier classification and notification determinations in accordance with the procedures as hereby modified to conform with the decision in *E.B. v. Verniero.*" *Id.* With respect to these registrants, the Order stated that "the trial court shall make such redeterminations after a de novo hearing on the record, which may be supplemented by the parties on application to the

---

3. This case differs from *E.B. v. Verniero,* 119 F.3d 1077 (3d Cir.1997), in that the plaintiffs here were all convicted after the passage of Megan's Law while the plaintiffs in *E.B.,* were all convicted prior to the passage of Megan's Law.

4. "Quincy Q" was reduced to a tier-one offender at his state court tier classification hearing and "Steven S" relocated and has therefore not yet been tiered.

5. The Rooker–Feldman doctrine requires the lower federal courts to abstain from reviewing the judgments of the highest courts of the states. Pursuant to 28 U.S.C. § 1257, only the United States Supreme Court has appellate jurisdiction to review final judgments of the highest state courts. *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).

court, or after a plenary hearing, as may be appropriate." *Id.*

On September 17, 1997, the Third Circuit entered an Order staying community notification on behalf of the class of plaintiffs in this case, the plaintiffs in *W.P., et al. v. Verniero,* Dkt. No. 96–5416,[6] and the plaintiffs in *Alan A. v. Verniero,* Dkt. No.97–5410.[7] *See* Orders dated September 17, 1997 (Dkt. Nos. 96–5416, 97–5418, 97–5410 and 97–5544). Pl. Br. at App. 1–11. The Third Circuit stay will remain in effect until "the earliest of the two following dates: (1) 90 days from the date of the denial of the petition for rehearing by this court in *W.P., et al. v. Verniero, et al.* if a petition for certiorari and a motion for an injunction pendente lite has not then been filed in that case with the Supreme Court of the United States; or (2) the date of the disposition by that court of the motion for an injunction pendente lite in that case in the event such a motion and petition have been filed within such 90–day period." *Id.* Community notification is therefore stayed for all members of the class certified in this case.[8]

## II. DISCUSSION

### A. *Standard of Review*

Under Fed.R.Civ.P. 56(c), "summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2551, 91 L.Ed.2d 265 (1986). A non-moving party nay not rest upon mere allegations, general denials, or vague statements in opposition to a summary judgment motion. If the non-moving party's evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Bixler v. Central Penna. Teamsters Health & Welfare Fund,* 12 F.3d 1292 (3d

Cir.1993); *Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Engineers,* 982 F.2d 884, 890–91 (3d Cir.1992).

It is not the role of the judge at the summary judgment stage to weigh the evidence or to evaluate its credibility, but to determine "whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The Court must draw all inferences in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, the Court must accept the non-movant's version as true. *Pastore v. Bell Tel. Co. of Penna.,* 24 F.3d 508, 512 (3d Cir.1994).

The substantive law governing the dispute will determine which facts are material, and only disputes over those facts "that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2509. A genuine issue of material fact for trial does not exist "unless the party opposing the motion can adduce evidence which, when considered in light of that party's burden of proof at trial, could be the basis for a jury finding in that party's favor." *J.E. Mamiye & Sons, Inc. v. Fidelity Bank,* 813 F.2d 610, 618 (3d Cir. 1987) (Becker.J., concurring).

### B. *Community Notification Does Not Violate the Double Jeopardy Clause or Constitute Cruel and Unusual Punishment*

In Count Three of their Verified Complaint, plaintiffs allege that Megan's Law violates the Double Jeopardy Clause because community notification constitutes a second punishment and that the state court tier classification hearing process impermissibly subjects plaintiffs to a second proceeding that may result in punishment. In Count Five of their Verified Complaint, plaintiffs

---

6. *W.P., et al. v. Verniero* was one of the cases heard on appeal by the Third Circuit in *E.B.,* 119 F.3d 1077.

7. The Third Circuit consolidated *Alan A.* and this case with its opinion in *W.P.,* the *E.B.* companion case, for all purposes of appeal. *See* Order dated

September 17, 1997 (Dkt. nos. 97–5410, 97–5418, and 97–5544).

8. The Third Circuit's September 17, 1997 Order does not affect our disposition of the issues presented in the motion at issue.

allege that community notification under Megan's Law imposes cruel and unusual punishment in violation of the Eighth Amendment. The Third Circuit's decision in *E.B.* disposes of those claims and plaintiffs do not challenge the Court's ruling on these issues. *E.B.*, 119 F.3d 1077. Therefore, consistent with *E.B.*, we hold that community notification under Megan's Law does not constitute "punishment" and therefore does not violate the Double Jeopardy Clause and does not constitute cruel and unusual punishment under the Eighth Amendment.

### C. Community Notification Does Not Violate Plaintiffs' Rights to Privacy

■ Plaintiffs allege that *E.B.* does not dispose of their claim that Megan's Law violates their rights to privacy. They contend that Megan's Law infringes upon their privacy in three ways: 1) by disseminating information concerning their home addresses, 2) by disseminating a compilation of information which would otherwise remain "scattered" or "wholly forgotten," and 3) by interfering with their family relationships. We disagree.

First, we find that the Third Circuit in *E.B.* did address registrants' rights to privacy and explicitly found that community notification does not violate any fundamental substantive due process right. Noting that the Supreme Court in *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), held that dissemination of an arrest record does not implicate any constitutionally protected privacy right, the Third Circuit stated:

> It follows that, just as the officers' publication of the official act of Davis' arrest did not violate any fundamental privacy right of Davis', neither does New Jersey's publication (through notification) of registrants' convictions and findings of dangerousness implicate any interest of fundamental constitutional magnitude. The reputational interests asserted by appellants are "very different" from matters relating to marriage, procreation, and child rearing, and are therefore "far afield" from what has

been deemed "fundamental" by the Constitution.

*E.B.*, 119 F.3d at 1103. The Third Circuit thus concluded that the registrants' privacy rights, at least those protecting reputational interests, were not implicated by community notification.[9] Contrary to plaintiffs' assertion, we do not find this conclusion to be dicta. It was necessary for the Court to consider whether community notification implicated some constitutionally protected right in order to determine whether there existed any such right which would be entitled to substantive due process protections. Analogizing to the privacy claim rejected in *Paul v. Davis*, the Court decided that no such fundamental right existed.

■ Second, even assuming the Third Circuit's *E.B.* analysis addressed only the reputational interests of registrants, not the interests plaintiffs are now asserting, we find that two of registrants' alleged privacy interests are not protected under the Constitution. We do not believe that registrants' interests in information concerning home addresses and in a compilation of information which would otherwise remain "scattered" or "wholly forgotten" are within the "zones of privacy" protected under the Constitution. *See Carey v. Population Services International*, 431 U.S. 678, 684–85, 97 S.Ct. 2010, 2015–16, 52 L.Ed.2d 675 (1977) (personal decisions relating to marriage, procreation, contraception, family relationships, child rearing and education are within protected "zones of privacy"). Because such information is public, plaintiffs' privacy interests are not implicated.

Information which is "by ... definition public" is not confidential information subject to constitutional protection. *Trade Waste Mgmt. Ass'n v. Hughey*, 780 F.2d 221, 234 (3d Cir.1985). Even those New Jersey courts which have found that the community notification provisions of Megan's Law implicate a privacy interest in information apart from the fact that "[t]hose convicted of crime may have no cognizable privacy interest in the fact of their conviction," *In the Matter of*

---

9. The Ninth Circuit has also held that no federal privacy interest is implicated by community notification under Washington's sex offender community notification law. *Russell v. Gregoire*, 124 F.3d 1079, 1997 WL 539074 at *15–*16 (9th Cir.1997).

*G.B.*, 147 N.J. 62, 74, 685 A.2d 1252 (1996); *see Doe v. Poritz,* 142 N.J. 1, 662 A.2d 367 (1995), have found that the privacy interests "fade when the information is a matter of public record." *G.B.,* 147 N.J. at 74, 685 A.2d 1252. It is of little consequence whether this public information is disclosed piecemeal or whether it is disclosed in compilation.[10] The community notification imposed by Megan's Law does not trigger a protected interest and is no greater than other deprivations already borne by the offender due to his or her status as a felon. The information contained in the notification—the offender's conviction, residence, place of business or school—is already public knowledge. Any attendant deprivations, such as the loss of an opportunity for housing, are not caused by the notification provision, but by his or her status as a felon. *See Alan A. v. Verniero,* 970 F.Supp. 1153, 1182–83 (D.N.J.1997).

Third, although plaintiffs do have a protectable privacy right in family relationships, we find that these privacy rights are not sufficient to override the State's "compelling interest" in protecting the public. It is well established that the Constitution protects an individual's right to "marry, establish a home and bring up children. . . ." *Meyer v. State of Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923), *see M.L.B. v. S.L.J.,* —— U.S. ——, —— ——, 117 S.Ct. 555, 563–64, 136 L.Ed.2d 473 (1996) (recognizing a constitutionally protected marital relationship and "a parent's . . . right to the companionship, care, custody, and management of his children."); *Planned Parenthood v. Casey,* 505 U.S. 833, 851, 112 S.Ct. 2791, 2806, 120 L.Ed.2d 674 (1992) (family choices are "central to personal dignity and autonomy."); *Pierce v. Society of Sisters,* 268 U.S. 510, 534–35, 45 S.Ct. 571, 573–74, 69 L.Ed. 1070 (1925) (right to direct upbringing of children). We do not doubt that being subject to Megan's Law community notification places a constitutionally cognizable strain upon familial relationships.

As important as registrants' interests in family relationships are, they sometimes must give way to competing interests. The State may interfere with protected familial relationships as long as it is has a sufficient interest which makes it necessary to do so. *Santosky v. Kramer,* 455 U.S. 745, 753–54, 102 S.Ct. 1388, 1394–95, 71 L.Ed.2d 599 (1982), *Lassiter v. Dept. of Social Services,* 452 U.S. 18, 27, 101 S.Ct. 2153, 2159, 68 L.Ed.2d 640 (1981); *Stanley v. Illinois,* 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551 (1972).

Here, the State has a compelling interest in protecting the public from the danger of recidivism posed by sex offenders. *E.B.,* 119 F.3d at 1104; *Alan A. v. Verniero,* 970 F.Supp. at 1195. It has a compelling interest in the health, education and welfare of children; its obligations as parens patriae require the State to protect children's best interests. *See Roe v. Wade,* 410 U.S. 113, 162–63, 93 S.Ct. 705, 731–32, 35 L.Ed.2d 147 (1973); *Santosky v. Kramer,* 455 U.S. 745, 766, 102 S.Ct. 1388, 1401, 71 L.Ed.2d 599 (1982). Children living and going to school in neighborhoods where they may come into contact with a convicted sex offender may be endangered if they are not warned of the houses where sex offenders, particularly those who committed their crimes against children, reside. The State also has a compelling interest in protecting women where a sex offender committed his crime against women.

Committing a crime, being apprehended, convicted and sentenced, and then being subject to supervision, control or public notice following completion of sentence certainly can put a strain on a convict's family relationships. Megan's Law may marginally increase this strain from that which would exist in any case. However, it is the criminal's own conduct which ultimately causes this strain, not a governmental effort to leg-

---

**10.** Plaintiffs rely on *United States Department of Justice v. Reporters Committee,* 489 U.S. 749, 763, 109 S.Ct. 1468, 1476, 103 L.Ed.2d 774 (1989) for the proposition that a compilation of public information implicates a privacy interest that otherwise does not exist merely because of the fact of compilation. As did the *E.B.* Court, we find plaintiffs' reliance on *Reporters Committee* to be inapposite. *See E.B.,* 119 F.3d at 1103, n. 23. *Reporters Committee* addressed privacy interests under the Freedom of Information Act, not the constitution and its analysis is therefore unhelpful.

islate or control behavior in areas "central to personal dignity and autonomy." *Casey,* 505 U.S. at 851, 112 S.Ct. at 2806.

As a matter of law, we find that plaintiffs' privacy challenge to Megan's Law must fail. We do not believe that there are any issues of material fact left to be resolved. Nor do we find, in light of the holding in *E.B.* and our own analysis of plaintiffs' privacy claims, that discovery is necessary to determine whether or not plaintiffs' privacy rights have been violated. Therefore, we conclude that the community notification provisions of Megan's Law do not unconstitutionally implicate registrants' rights to privacy. Accordingly, this Court will grant defendant's motion for summary judgment on plaintiffs' privacy claims.

### D. Due Process Requirements

■ The New Jersey Supreme Court, in accordance with the Third Circuit's due process holding in *E.B.,* issued an Order on September 10, 1997 which amended the procedures the State is required to follow in making tier classification and notification decisions for Megan's Law registrants.[11] The Order declared that "the State has the burden of persuasion to establish the registrant's tier classification and notification by clear and convincing evidence[.]" Order of the Supreme Court of New Jersey, September 10, 1997. Buncher Cert. Sept. 29, 1997, at Exh. 3. It further provided that registrants who were classified under the pre-*E.B.* burden of proof standard "shall through appropriate notice be granted the opportunity to seek redetermination of their tier classification and notification determinations in accordance with the procedures as hereby modified to conform with the decision in *E.B. v. Verniero."* *Id.* It also declared that "the

trial court shall make ... redeterminations after a de novo hearing on the record, which may be supplemented by the parties on application to the court, or after a plenary hearing, as may be appropriate." *Id.* Defendants claim this Order makes plaintiffs' due process challenges moot and requests us to grant them summary judgment on the due process claims. Plaintiffs, on the other hand, claim that this Order does not adequately protect the due process rights of some of their class members and that therefore summary judgment should be denied. Specifically, plaintiffs allege that the procedures for redetermination hearings, which do not permit a new plenary hearing undertaken under the *E.B.* burden of persuasion, fail to adequately guarantee registrants the due process mandated by the Third Circuit. We find the plaintiffs' due process arguments persuasive and therefore will deny summary judgment for the defendants.

The New Jersey Supreme Court's procedures fail to protect the due process rights of registrants whose tier level was determined prior to the Third Circuit's decision in *E.B.* because they permit a trial court in a redetermination proceeding to apply the new *E.B.* burden of proof to a record established under unconstitutional pre-*E.B.* procedures. The Third Circuit in *E.B.* held:

> Because 'the possible injury to the individual [registrant] is significantly greater than any possible harm to the state,' the registrant consistent with due process, cannot 'be asked to share equally with society the risk of error.' It necessarily follows that the due process clause requires that the state prove its case by clear and convincing evidence in a *Megan's Law proceeding.*

11. Unlike defendants, we find it of little significance that the "[New Jersey] Supreme Court has not yet completed the task of revising and promulgating the 'Outline of Procedure' (as required by its September 10 Order), which will set forth the applicable procedures by which the redeterminations are governed." Def. Reply Br. at 7 n. *. Trial judges must follow the current Order until, if ever, such an Outline of Procedure changes the mandates of the Order. Plaintiffs' challenge to the procedures for redetermination

hearings as set forth in the Order thus presents a case or controversy under Article III of the U.S. Constitution. Plaintiff's do not need to subject themselves to a redetermination hearing procedure which they maintain is unconstitutional before challenging it in federal court. *See Thomas v. Union Carbide Agric. Products Co.,* 473 U.S. 568, 579–80, 105 S.Ct. 3325, 3331–3332, 87 L.Ed.2d 409 (1985) (holding that a significant threat of having to attend an unconstitutional arbitration hearing is sufficient to satisfy Article III case or controversy requirements).

*E.B.* at 1111 (*quoting Addington v. Texas,* 441 U.S. 418 427, 99 S.Ct. 1804, 1809, 60 L.Ed.2d 323 (1979) (emphasis added)). The Court did not limit this new burden of proof to a registrant's original determination hearing. As plaintiffs correctly point out, the Court, well aware of the intricacies of the various Megan's Law proceedings, required the State to bear the burden of persuasion by clear and convincing evidence in any "Megan's Law proceeding." Thus, the new burden of proof applies to redetermination hearings if the original hearing was held before the revised New Jersey Supreme Court procedures went into effect.

In order for registrants classified under the prior, now unconstitutional, classification proceedings to receive the process due them, they deserve a meaningful opportunity to be heard upon a record developed under constitutional standards of proof. This entitles them to an opportunity to "wipe[ ] the slate clean." *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965) (where aggrieved party was limited in a subsequent hearing to defend against an unconstitutional adoption hearing based on the adverse decision in the first hearing, due process violation arose). Plaintiffs permitted redetermination hearings must be given the opportunity to develop a new record under the knowledge that the State now bears the burden of persuasion by clear and convincing evidence.

In a civil case, "where the burden of proof lies may be decisive of the outcome." *Id.* at 551, 85 S.Ct. at 1191. The right to a hearing at which the State bears the burden to prove its case by clear and convincing evidence carries with it the right to determine a legal strategy and create a record based on that standard. Courts must endeavor to "put[ ] parties into the position they would have been had no [due process] error taken place." *Batanic v. Immigration and Naturalization Service,* 12 F.3d 662, 667 (7th Cir.1993). When registrants bore the burden of persuasion they may have felt compelled to pursue legal strategies they would not have pursued

under the *E.B.* burden of proof. At best, registrants may have been forced to take risks and use strategies that would no longer be prudent under the new burden of proof. At worst, registrants may have foregone any legal defense at all; perhaps concluding that they would be unable to bear the burden of persuasion and therefore reluctantly accepting their tier classifications without exercising their constitutional right to a meaningful opportunity to be heard. To restore these registrants to the position they would have been had constitutional procedures been in place, we find that courts must afford registrants entitled to a redetermination hearing an opportunity for a plenary hearing.

Based on our conclusion that registrants classified under pre-*E.B.* procedures and entitled to a redetermination hearing must be given an opportunity to be heard based upon a record developed under the due process required by *E.B.,* we believe summary judgment on this issue is inappropriate. A genuine issue of material fact exists as to whether any class members will have their due process rights violated in the event of a redetermination hearing by being bound to a record developed under an unconstitutional burden of proof.[12] In order to determine how many, if any, class members will be subjected to the New Jersey Supreme Court's inadequate redetermination procedures, we will allow the parties to engage in discovery and proceed with the litigation of plaintiffs' due process claims.

## III. CONCLUSION

The Third Circuit having disposed of these issues in favor of the Attorney General and county prosecutors in *E.B.,* the plaintiffs do not challenge defendants' motion for summary judgment on their Double Jeopardy Clause and cruel and unusual punishment claims. Therefore, we will grant summary judgment to defendants on these claims. As a matter of law, we find that no constitutionally protected privacy rights are violated by the community notification provisions of Megan's Law. Accordingly, we will grant the

---

**12.** The issue of due process for plaintiffs entitled to redetermination hearings is not moot, as defendants urge us to find, if any class members

may be subjected to the New Jersey Supreme Court's current redetermination procedures.

defendants' motion for summary judgment as to the privacy claims. However, we will deny the defendants' motion for summary judgment as to the due process claims. There may be members of the plaintiff class who have a due process right to challenge their tier classification in a redetermination hearing upon a record developed under the burden of proof mandated by *E.B.* Because a genuine issue of material fact exists, we find that the defendants are not entitled to summary judgment on plaintiffs' due process claims. Accordingly, we shall allow this claim to go forward and will permit the parties to engage in any necessary discovery.