

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-16-1999

# Paul P v. Verniero

Precedential or Non-Precedential:

Docket 97-5791

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"Paul P v. Verniero" (1999). *1999 Decisions.* Paper 63.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/63

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed March 16, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 97-5791

PAUL P. (a minor, by Laura L., his legal guardian);
QUINCY Q.; RONALD R.; STEVEN S. (a minor, by Sally
S., his legal guardian) (all fictitious names), Individually
and as Representatives of a class pursuant to Fed. R. Civ.
P. 23(a) and 23(b)(2)

v.

PETER VERNIERO, ATTORNEY GENERAL OF NEW
JERSEY; JEFFREY S. BLITZ, ATLANTIC COUNTY
PROSECUTOR; WILLIAM SCHMIDT, BERGEN COUNTY
PROSECUTOR; STEPHEN G. RAYMOND, BURLINGTON
COUNTY PROSECUTOR; LEE A. SOLOMON, ACTING
CAMDEN COUNTY PROSECUTOR; STEPHEN D. MOORE;
CAPE MAY COUNTY PROSECUTOR; ARTHUR
MARCHAND, CUMBERLAND COUNTY PROSECUTOR;
CLIFFORD J. MINOR, ESSEX COUNTY PROSECUTOR;
ANDREW YURICK, GLOUCESTER COUNTY
PROSECUTOR; CARMEN MESSANO, HUDSON COUNTY
PROSECUTOR; STEPHEN B. RUBIN, HUNTERDON
COUNTY PROSECUTOR; MARYANN K. BIELAMOWICZ,
MERCER COUNTY PROSECUTOR; ROBERT W. GLUCK,
MIDDLESEX COUNTY PROSECUTOR; JOHN KAYE,
MONMOUTH COUNTY PROSECUTOR; JOHN B.
DANGLER, MORRIS COUNTY PROSECUTOR; DANIEL J.
CARLUCCIO, OCEAN COUNTY PROSECUTOR; RONALD S.
FAVA, PASSAIC COUNTY PROSECUTOR; RONALD A.
EPSTEIN, SALEM COUNTY PROSECUTOR; MELAINE B.
CAMPBELL, ACTING SOMERSET COUNTY PROSECUTOR;
DENNIS O'LEARY; EDWARD NEAFSEY, ACTING UNION
COUNTY PROSECUTOR; JOHN J. O'REILLY, WARREN
COUNTY PROSECUTOR

Paul P. (a minor, by Laura L., his legal guardian) and
Ronald R. (all fictitious names), on their own behalf and
as representatives of a class pursuant to Fed. R. Civ. P.
23(a) and 23(b)(2),
        Appellants

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 97-cv-02919)
District Judge: Hon. Joseph E. Irenas

Argued July 9, 1998

Before: SLOVITER and ROTH Circuit Judges, and
FULLAM, District Judge*

(Filed March 16, 1999)

        Edward L. Barocas (Argued)
        Office of Public Defender
        Trenton, N.J. 08625

         Attorney for Appellant

        Joseph L. Yannotti
        Peter G. Verniero (Argued)
        Office of Attorney General of New
         Jersey
        Trenton, N.J. 08625

        Gladys E. Rodriguez
        Office of County Prosecutor
        Camden, N.J. 08102

        Betsy L. Phillips
        Office of County Prosecutor
        Mays Landing, N.J. 08330

_____

*Hon. John P. Fullam, Senior United States District Judge for the
Eastern District of Pennsylvania, sitting by designation.

Nancy Lotstein
Office of County Prosecutor
Woodbury, N.J. 08096

Maureen O'Brien
Office of County Prosecutor
Elizabeth, N.J. 07207

 Attorneys for Appellee

Faith S. Hochberg
 United States Attorney
Camden, N.J. 08101

George S. Leone (Argued)
 Assistant U.S. Attorney
Newark, N.J. 07102

Frank W. Hunger
 Assistant Attorney General
Leonard Schaitman
Wendy M. Keats
 Attorneys, Appellate Staff
Civil Division, Department of Justice
Washington, D.C. 20530

 Attorneys for United States as
 Amicus-Curiae Supporting
 Appellees

OPINION OF THE COURT

SLOVITER, Circuit Judge.

I.

Plaintiff Paul P. sues on his behalf and on behalf of a class of persons who, having been convicted of specified sex crimes, are required to comply with N. J. Stat. Ann. S 2c:7-1 et seq., known as "Megan's Law," which provides for a system of registration and community notification. Named as defendants are the Attorney General of New Jersey and

numerous County Prosecutors (collectively, the "State defendants").

In a related action, E.B. v. Verniero, 119 F.3d 1077 (3d Cir. 1997), cert. denied, 118 S. Ct. 1039 (1998), this court rejected the claims of comparably situated persons that the community notification requirements violate the Double Jeopardy Clause or the Ex Post Facto Clause of the United States Constitution. That holding of E.B. was predicated on the conclusion that the notification required by Megan's Law does not constitute punishment. Judge, now Chief Judge, Becker dissented to this portion of the holding. The E.B. decision also held that "[t]he Due Process Clause . . . would be violated by any Tier 2 or Tier 3 notification that occurred without a prior opportunity to challenge the registrant's classification and notification plan in a hearing at which the prosecutor has the burden of persuasion and must prove her case by clear and convincing evidence." Id. at 1111.

In this case, plaintiffs raise a challenge to Megan's Law that they claim is different from that considered in E.B. They argue that the statutory requirement that the class members provide extensive information to local law enforcement personnel, including each registrant's current biographical data, physical description, home address, place of employment, schooling, and a description and license plate number of the registrant's vehicle, and the subsequent community notification is a violation of their constitutionally protected right to privacy.

The statutory scheme is described in detail in E.B., and we refer only briefly to the salient details. We explained the registration requirements as follows:

> The registrant must provide the following information to the chief law enforcement officer of the municipality in which he resides: name, social security number, age, race, sex, date of birth, height, weight, hair and eye color, address of legal residence, address of any current temporary legal residence, and date and place of employment. N.J.S.A. 2C:7-4b(1). He must confirm his address every ninety days, notify the municipal law enforcement agency if he moves, and re-register with

4

> the law enforcement agency of any new municipality.
> N.J.S.A. 2C:7-2d to e.

Id. at 1082 (quoting Artway v. Attorney General, 81 F.3d 1235, 1243 (3d Cir. 1996)).

The information provided by the registrant is put into a central registry, open to other law enforcement personnel but not to public inspection. Law enforcement officials then use the data provided to apply a "Risk Assessment Scale," a numerical scoring system, to determine the registrant's "risk of offense" and the tier in which the registrant should be classified. In the case of Tier 1 registrants, notification is given only to law enforcement agents "likely to encounter" the registrant. Tier 2, or "moderate risk," notification is given to law enforcement agents, schools, and community organizations "likely to encounter" the registrant. Tier 3, or "high risk," notification goes to all members of the public "likely to encounter" the registrant. Notifications generally contain a warning that the information is confidential and should not be disseminated to others, as well as an admonition that actions taken against the registrant, such as assaults, are illegal.

The prosecutor must provide the registrant with notice of the proposed notification. A pre-notification judicial review process is available for any registrant who wishes to challenge his or her classification.

The plaintiffs are Tier 2 and Tier 3 registrants who have been certified as a class and whose offenses were committed after the enactment of Megan's Law. When Paul P. filed the original complaint on June 16, 1997, alleging that the statute violated plaintiffs' constitutional rights of privacy and due process, as well as the constitutional prohibition against double jeopardy and cruel and unusual punishment, E.B. had not yet been decided. This court decided E.B. shortly thereafter. The State defendants, relying on E.B., moved for summary judgment; plaintiffs argued in opposition that E.B. did not dispose of their privacy claim and that discovery was required, inter alia, on the due process claim. On October 29, 1997, the District Court granted the State defendants' motion for summary judgment as to all but the plaintiffs' due process claim. See

Paul P. v. Verniero, 982 F. Supp. 961 (D.N.J. 1997). At the request of the plaintiffs and with the consent of the Attorney General, the court certified the order as appealable under Federal Rule of Civil Procure 54(b). The court later granted summary judgment for the State defendants on the due process claim. The plaintiff class limits its appeal to the claim that Megan's Law violates its constitutional rights to privacy. The State defendants and the United States, which has filed an amicus brief, vigorously support the statute.

II.

The legal foundation for plaintiffs' claim is the Supreme Court's recognition that there is "a right of personal privacy, or a guarantee of certain areas or zones of privacy," protected by the United States Constitution. Roe v. Wade, 410 U.S. 113, 152 (1973). This "guarantee of personal privacy" covers "only personal rights that can be deemed `fundamental' or `implicit in the concept of ordered liberty.' " Id. This privacy right "has some extension to activities relating to marriage, procreation, contraception, family relationships, and child rearing and education." Id. at 152–53 (citations omitted).

Plaintiffs argue that Megan's Law infringes upon their constitutionally protected privacy interests in two ways. One is by the dissemination of information about them, most particularly by disseminating both their home addresses and a "compilation of information which would otherwise remain `scattered' or `wholly forgotten.' " Appellants' Br. at 12. Their other claim is that the community notification infringes upon their "privacy interests in their most intimate relationships – those with their spouses, children, parents, and other family members." Appellants' Br. at 12.

Plaintiffs thus seek to invoke the two categories of privacy interests identified by the Supreme Court in Whalen v. Roe, 429 U.S. 589 (1977), where the Court stated: "The cases sometimes characterized as protecting `privacy' have in fact involved at least two different kinds of interests. One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in

6

making certain kinds of important decisions." Id. at 598–600 (footnotes omitted).

The parties dispute the extent to which our decision in E.B. is dispositive of the privacy issue before us in this case. Plaintiffs contend that no privacy issue was raised, briefed, or argued in E.B. and that the discussion in E.B. relating to cases on which they rely is dictum. The State defendants, on the other hand, regard "[t]he portions of the E.B. decision holding that community notification does not implicate a fundamental privacy interest and the finding of a compelling state interest in protecting the public from recidivist sex offenders," as "control[ling] the decision in this case." Appellees' Br. at 12. We thus turn to examine the E.B. decision.

The privacy issue arose in E.B. during our analysis of whether community notification mandated by Megan's Law constitutes punishment for purposes of the Ex Post Facto and Double Jeopardy clauses. In that context, we stated that the "primary sting from Megan's law notification comes by way of injury to what is denoted . . . as reputational interests. This includes . . . the myriad of . . . ways in which one is treated differently by virtue of being known as a potentially dangerous sex offender." E.B., 119 F.3d at 1102. We then referred to the Supreme Court's holding in Paul v. Davis, 424 U.S. 693 (1976), stating:

> Just as Davis sought constitutional protection from the consequences of state disclosure of the fact of his shoplifting arrest and law enforcement's assessment that he was a continuing risk, so registrants seek protection from what may follow disclosure of facts related to their sex offense convictions and the resulting judgment of the state that they are a continuing risk. It follows that, just as the officers' publication of the official act of Davis' arrest did not violate any fundamental privacy right of Davis', neither does New Jersey's publication (through notification) of registrants' convictions and findings of dangerousness implicate any interest of fundamental constitutional magnitude.

E.B., 119 F.3d at 1103.

7

We rejected the contention that dissemination of information about criminal activity beyond law enforcement personnel is analogous to historical punishments, such as the stocks, cages, and scarlet letters. We found instead that the dissemination is more like the dissemination of "rap sheet" information to regulatory agencies, bar associations, prospective employers, and interested members of the public that public indictment, public trial, and public imposition of sentence necessarily entail. Id. at 1100-01. We noted that although the Supreme Court later recognized in United States Department of Justice v. Reporter's Committee for Freedom of the Press, 489 U.S. 749 (1989), that the dissemination of "rap sheets" implicates a privacy interest, the Court there was determining whether a"rap sheet" fell under the "privacy interest" protected by an exemption to the Freedom of Information Act ("FOIA"), not that protected by the Constitution. We pointed out that the Supreme Court itself made the distinction between the two types of privacy interest, and we quoted its statement in Reporter's Committee, 489 U.S. at 762 n.13, that "[t]he question of the statutory meaning of privacy under the FOIA is, of course, not the same as the question . .. whether an individual's interest in privacy is protected by the Constitution." E.B., 119 F.3d at 1100 n.21.

In this respect, we disagreed with the Supreme Court of New Jersey which, in Doe v. Poritz, 142 N.J. 1, 83-87, 662 A.2d 367, 409-11 (1995), had interpreted Reporter's Committee to compel the conclusion that a federal constitutional right to privacy is implicated by notification. See E.B., 119 F.3d at 1103 n.23. Finally, we concluded in E.B. that even if a "fundamental right" were implicated, "the state's interest here would suffice to justify the deprivation." Id. at 1104.

Determining the import of this discussion in E.B. is difficult. On the one hand, it has more significance than mere dictum, as it was relevant to the holding that Megan's Law was not punitive. On the other hand, the discussion arose in a context different than it does here; the privacy issue was tangential to the determination of the different constitutional issues raised. The discussion also focused on the dissemination of information -- the fact of "registrants'

8

convictions and findings of dangerousness" -- that is to some extent distinct from the portion of the disclosures plaintiffs now challenge -- the revelation of their home addresses and the compilation of otherwise scattered information. Finally, we note that in E.B., we began our opinion with the caveat, "The issues before us are difficult but relatively narrow. We are not called upon to decide whether Megan's Law can constitutionally be applied to one who has committed one of the designated sex crimes after its enactment." Id. at 1081.

The District Court in this case apparently had little difficulty rejecting Paul P.'s privacy claims based on the decision in E.B. It stated, "we find that the Third Circuit in E.B. did address registrants' rights to privacy and explicitly found that community notification does not violate any fundamental substantive due process right." Paul P., 982 F. Supp. at 966. Nonetheless, the court continued its discussion by "assuming the Third Circuit's E.B. analysis addressed only the reputational interests of registrants, not the interests plaintiffs are now asserting," and it then concluded that the registrants' interests in information concerning their home address and in compilation of information are not within the protected "zones of privacy" because the information is public. Id.

We do not agree with the State defendants that our decision in E.B. is dispositive of the privacy issue presented here, as there seems to be little dispute that this issue was not directly presented there. Nonetheless, our characterization in E.B. of key cases, such as Reporter's Committee and Paul v. Davis, merits considerable deference and we are not likely to disagree with our colleagues absent compelling reasons to do so.

III.

In several cases, this court has considered what types of information may be protected from disclosure based on a privacy interest. In Fraternal Order of Police v. City of Philadelphia, 812 F.2d 105, 112-17 (3d Cir. 1987), we stated that "[i]n determining whether information is entitled to privacy protection, we have looked at whether it is within

9

an individual's reasonable expectations of confidentiality. The more intimate or personal the information, the more justified is the expectation that it will not be subject to public scrutiny." Id. at 112-13.

Many of the cases in this circuit finding a privacy interest in preventing disclosure have concerned medical information or medical records. Almost two decades ago, we stated in United States v. Westinghouse Electric Corp., 638 F.2d 570 (3d Cir. 1980), "[A]lthough the full measure of the constitutional protection of the right to privacy has not yet been delineated, . . . [t]here can be no question that an employee's medical records, which may contain intimate facts of a personal nature, are well within the ambit of materials entitled to privacy protection." Id. at 577. Similarly, in Fraternal Order of Police, we held that the medical information a police questionnaire sought to elicit from employees was entitled to protection against disclosure. 812 F.2d at 112-13. In fact, in Doe v. SEPTA, 72 F.3d 1133 (3d Cir. 1995), we specifically held that medical prescription records are "within the ambit of information protected by the Constitution." Id. at 1137-38; see also Doe v. Borough of Barrington, 729 F. Supp. 376, 382-85 (D.N.J. 1990) (holding that because "[t]he Third Circuit recognizes a privacy right in medical records and medical information," family members' AIDS status was entitled to protection).

However, the privacy right in record information is not limited to medical records. In Nixon v. Administrator of General Services, 433 U.S. 425, 455-65 (1977), the Court recognized that the President had a protected privacy interest in at least some of the 42 million pages of documents covered by the Presidential Recordings and Materials Preservation Act, and among those protected were private communications between the President and his family and advisors, as distinguished from the millions of records dealing with government business and official duties. Similarly, in Fraternal Order of Police, we held that police officers and prospective police officers had privacy interests in certain financial information sought by a police questionnaire, and we noted cases from other courts that have so held. See 812 F.2d at 115; see also Plante v. Gonzalez, 575 F.2d 1119, 1132-36 (5th Cir. 1978)

10

(considering the constitutionality of financial disclosure laws that regulate elected officials); cf. Slayton v. Willingham, 726 F.2d 631, 635 (10th Cir. 1984) (stating that whether plaintiff had a privacy interest in personal photographs would depend on whether "he had a legitimate expectation of privacy in the photos").

Other courts have narrowly interpreted the type of information protected. For example, the Court of Appeals for the Sixth Circuit has considered the right to prevent the disclosure of private information to be part of the constitutional right to privacy only when disclosure would "implicate a fundamental liberty interest," such as the interest in preserving personal security or bodily integrity. Bloch v. Ribar, 156 F.3d 673, 683–84 (6th Cir. 1998). In Doe v. Sundquist, 106 F.3d 702 (6th Cir.), cert. denied, 118 S. Ct. 51 (1997), it rejected the contention that adoption records are constitutionally confidential.

Even information that is entitled to privacy protection may nonetheless be subject to disclosure when the government's interest in disclosure is compelling. For example, although we stated in Westinghouse that medical information is "matter which the individual is ordinarily entitled to retain within the `private enclave where he may lead a private life,' " 638 F.2d at 577, we also recognized that "the right of an individual to control access to her or his medical history is not absolute," id. at 578, and that there are some governmental interests, such as public health or other public concerns, that "may support access to facts an individual might otherwise choose to withhold," id. We followed that approach in a later case, where we held that the medical information requested by a police department questionnaire should be disclosed because it was directly related to the interest of the police department in selecting officers who were physically and mentally capable of handling the positions for which they were applying. Fraternal Order of Police, 812 F.2d at 114.

Public interest has justified disclosure of other categories of information as well. In the same case, we stated that "the strong public interest in avoiding corruption among officers assigned to a unit designed to perform investigations in areas traditionally susceptible to corruption outweighs

11

police officers' limited privacy expectations in the financial information sought by the . . . questionnaire." Id. at 116.

Against this background, the Court of Appeals for the Ninth Circuit upheld Washington state's version of Megan's Law against the claim that it violated the plaintiffs' right to privacy. See Russell v. Gregoire, 124 F.3d 1079, 1093-94 (9th Cir. 1997), cert. denied, 118 S. Ct. 1191 (1998). Significantly, the Washington statute was less pervasive than the one before us as it authorized disclosure of only the "general vicinity of the offender's residence" and not the exact address. Nonetheless, the court's analysis is relevant to this case. The court construed the right to privacy to "protect only personal information," and noted that most of "[t]he information collected and disseminated by the Washington statute is already fully available to the public and is not constitutionally protected." Id. at 1094. The court permitted disclosure relating to the offender's residence and employment, because even if not publicly available, such information was not "generally considered `private'." Id.; see also Doe v. Kelley, 961 F. Supp. 1105, 1112 (W.D. Mich. 1997) (denying a preliminary injunction of Michigan's version of Megan's Law because "plaintiffs have failed to demonstrate the existence of a legitimate privacy interest in preventing compilation and dissemination of truthful information that is already, albeit less conveniently, a matter of public record"). New York's version of Megan's Law has also been sustained, but in an opinion that did not consider the privacy issue. Doe v. Pataki, 120 F.3d 1263 (2d Cir. 1997), cert. denied, 118 S. Ct. 1066 (1998).

The District Court here concluded that there was no privacy interest in the plaintiffs' home addresses, stating that "[b]ecause such information is public, plaintiffs' privacy interests are not implicated." Paul P., 982 F. Supp. at 966. As to the argument based on the "compilation" of various information, the court held that "[i]t is of little consequence whether this public information is disclosed piecemeal or whether it is disclosed in compilation." Id. at 967.

To the extent that plaintiffs' alleged injury stems from the disclosure of their sex offender status, alone or in

12

conjunction with other information, the District Court's opinion is in line with other cases in this court and elsewhere holding specifically that arrest records and related information are not protected by a right to privacy. See Fraternal Order of Police, 812 F.2d at 117 (holding that "arrest records are not entitled to privacy protection" because they are public); Cline v. Rogers, 87 F.3d 176, 179 (6th Cir.) (holding that "there is no constitutional right to privacy in one's criminal record" because "arrest and conviction information are matters of public record"), cert. denied, 117 S. Ct. 510 (1996). In Trade Waste Management Association, Inc. v. Hughey, 780 F.2d 221 (3d Cir. 1985), this court discussed a privacy challenge to a statute requiring certain disclosures from applicants for environmental permits. We noted the privacy interest behind avoidance of disclosure of "personal matter," such as "personal medical history," but held that records of criminal convictions and pending criminal charges "are by definition public," and therefore not protected. Id. at 234.

This issue was also considered in Paul v. Davis, relied on heavily in the E.B. opinion. The Supreme Court rejected the argument that a police chief who published a flier identifying the plaintiff with a photograph as an "active shoplifter" violated plaintiff's "right to privacy." 424 U.S. at 695-96. The Court distinguished cases dealing with "matters relating to marriage, procreation, contraception, family relationships, and child rearing and education," from the claims made by Paul. Id. at 713. The court stated:

> Respondent's claim is far afield from this line of decisions. He claims constitutional protection against the disclosure of the fact of his arrest on a shoplifting charge. His claim is based, not upon any challenge to the State's ability to restrict his freedom of action in a sphere contended to be "private," but instead on a claim that the State may not publicize a record of an official act such as an arrest. None of our substantive privacy decisions hold this or anything like this, and we decline to enlarge them in this manner.

Id. (emphasis added).

Plaintiffs argue that Paul v. Davis is inapposite because the Court was merely dealing with a reputational interest,

13

and not any of the interests they assert here. It is true that in rejecting the argument that there was a liberty interest at stake, the Court in Paul v. Davis held that "reputation alone" does not invoke the procedural due process protections. 424 U.S. at 701. And, we recognize that Paul v. Davis preceded the Court's decisions in Whalen and Nixon which made further steps in the development of the right of privacy. See Slayton, 726 F.2d at 635 (noting possible effect of Whalen and Nixon on plaintiff's claim based on "disclosure of personal matters rather than mere damage to his reputation"). Nonetheless, even if the interests plaintiffs assert in preventing the disclosure of private information is somewhat different than the reputational interest discussed in E.B. and rejected in Paul v. Davis, we cannot simply disregard the language of the Supreme Court rejecting any privacy interest in information, such as arrests, which is the subject of official records.

We are not insensitive to the argument that notification implicates plaintiffs' privacy interest by disclosing their home addresses. The compilation of home addresses in widely available telephone directories might suggest a consensus that these addresses are not considered private were it not for the fact that a significant number of persons, ranging from public officials and performers to just ordinary folk, choose to list their telephones privately, because they regard their home addresses to be private information. Indeed, their view is supported by decisions holding that home addresses are entitled to privacy under FOIA, which exempts from disclosure personal files"the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. S 552(b)(6). Most of the cases addressing this FOIA exemption concern the interaction of the Federal Labor Relations Act and the claimed need of employees' addresses for bargaining purposes. In United States Department of Defense v. FLRA, 510 U.S. 487 (1994), the Supreme Court held that the Privacy Act forbids the disclosure by federal agencies of employee addresses to collective bargaining representatives, thereby resolving a division among the circuits. Compare FLRA v. United States Dep't of Defense, 977 F.2d 545,549 (11th Cir. 1992) ("[F]requently [home address] information is unavailable because the person has made a genuine

14

effort to keep the information private -- by getting an unlisted telephone number or asking to be removed from mailing lists."), FLRA v. U. S. Dep't of Navy, 966 F.2d 747, 758-59 (3d Cir. 1992) (en banc) (finding privacy interest in names and addresses under FOIA was outweighed by union's interest in communication to employees), and United States Dep't of Navy v. FLRA, 840 F.2d 1131, 1139 (3d Cir. 1988) (same), with FLRA v. U. S. Dep't of Treasury, Fin. Management Serv., 884 F.2d 1446, 1456 (D.C. Cir. 1989) (barring disclosure).

Plaintiffs' primary argument receives further support from the New Jersey Supreme Court holding, relying on FOIA cases, that "[t]he fact that plaintiff's home address may be publicly available" aside, privacy interests were implicated by the disclosure of the home address along with the other information. Poritz, 142 N.J. at 83, 662 A.2d at 409.

Although these cases are not dispositive, see E.B., 119 F.3d at 1103 n.23, they reflect the general understanding that home addresses are entitled to some privacy protection, whether or not so required by a statute. We are therefore unwilling to hold that absent a statute, a person's home address is never entitled to privacy protection. As the Court said in Department of Defense, persons "have some nontrivial privacy interest in nondisclosure. . . ." 510 U.S. at 501.

Accepting therefore the claim by the plaintiffs that there is some nontrivial interest in one's home address by persons who do not wish it disclosed, we must engage in the balancing inquiry repeatedly held appropriate in privacy cases.

The nature and significance of the state interest served by Megan's Law was considered in E.B. There, we stated that the state interest, which we characterized as compelling, "would suffice to justify the deprivation even if a fundamental right of the registrant's were implicated." E.B., 119 F.3d at 1104. We find no reason to disagree. The public interest in knowing where prior sex offenders live so that susceptible individuals can be appropriately cautioned does not differ whether the issue is the registrant's claim

15

under the Double Jeopardy or Ex Post Facto Clauses, or is the registrant's claim to privacy. Thus, as the District Court concluded, the plaintiffs' privacy claim based on disclosure of information must fail. Because we find the government's interest in preventing sex offenses compelling, we need not decide whether the degree of effort needed to assemble otherwise available but dispersed information ought to be considered as a factor in determining the reasonableness of an individual's expectation of privacy in the compiled data.

IV.

The other argument raised by plaintiffs as part of their privacy claim is that community notification infringes upon their fundamental interest in family relationships. In pressing this argument, which concerns the second type of protected interest referred to in Whalen, 429 U.S. at 598– 600, plaintiffs rely on the precedent of cases such as Meyer v. Nebraska, 262 U.S. 390, 399 (1923), Planned Parenthood v. Casey, 505 U.S. 833, 851 (1992), and Pierce v. Society of Sisters, 268 U.S. 510, 534–35 (1925), which recognize the privacy protection accorded "matters relating to marriage, procreation, contraception, family relationships, and child rearing and education," Paul, 424 U.S. at 713. In E.B., we recognized that Megan's Law "impose[s] no restrictions on a registrant's ability to live and work in a community," E.B. 119 F.3d at 1102, but that plaintiffs complain of the law's "indirect effects: Actions that members of the community may take as a result of learning of the registrant's past, his potential danger, and his presence in the community," id. Even if we concede, as the District Court did, that "being subject to Megan's Law community notification places a constitutionally cognizable strain upon familial relationships," Paul P., 982 F. Supp. at 967, these indirect effects which follow from plaintiffs' commission of a crime are too substantially different from the government actions at issue in the prior cases to fall within the penumbra of constitutional privacy protection. Megan's Law does not restrict plaintiffs' freedom of action with respect to their families and therefore does not intrude upon the aspect of the right to privacy that protects an individual's independence in making certain types of important decisions.

16

We considered and rejected a comparable claim in Scheetz v. The Morning Call, Inc., 946 F.2d 202 (3d Cir. 1991), where plaintiffs, a married couple, complained that a newspaper's disclosure of a police report of a violent domestic incident infringed on their decisional right to privacy because it chilled their right to seek marital counseling. Id. at 207 n.7. Likewise, the Court of Appeals for the Sixth Circuit recognized a distinction between matter a statute directly regulates and the indirect effects its application may engender. In Sundquist, 106 F.3d at 705-06, the court rejected the claim that a statute that permitted the disclosure of adoption records effected an infringement on "familial" or "reproductive" privacy. The court noted that the statute did not directly regulate when, how or by whom a child may be adopted, and hence found that it did not infringe upon the right to marry and raise children. Id. at 706.

There are other examples of decisions sustaining statutes that may indirectly influence familial relationships. See, e.g., Harris v. McRae, 448 U.S. 297 (1980) (holding that government does not infringe a fundamental privacy interest by subsidizing childbirth but not abortion); Maher v. Roe, 432 U.S. 464 (1977) (same); Murillo v. Bambrick, 681 F.2d 898, 903-05 (3d Cir. 1982) (holding that New Jersey statute did not infringe fundamental privacy right by imposing filing fee on divorce petitions); cf. Dandridge v. Williams, 397 U.S. 471 (1970) (holding that state does not violate Equal Protection Clause by capping amount of grant under AFDC, regardless of family size); id. at 520 n.14 (Douglas, J., dissenting) (refusing to base analysis on claim that maximum grant regulation infringes fundamental right of procreation because "the effect of the . . . regulation upon the right . . . is marginal and indirect at best"). We put Megan's Law in the same category.

Finally, it is important to emphasize that it was the actions of the plaintiffs that triggered application of Megan's Law. Whenever an individual commits a crime and is convicted and sentenced, the publicity will necessarily have an impact on the offender's family. Concededly, the registration and notification provisions of Megan's Law may evoke more publicity than usual, but that is the

consequence of the nature of the crime. We cannot conclude that this indirect effect is a violation of the autonomous decision branch of the constitutional right of privacy.

V.

During the pendency of this appeal, appellants filed a series of motions under seal, six in all, seeking to supplement the record with evidence of recent incidents which have caused serious adverse consequences to them and their families. In response, appellee Peter Verniero filed three motions to further supplement the record with evidence of the government's response to such unfortunate incidents. In light of our holding above, the material is not relevant to a determination of the issue before us-- whether Megan's Law's notification provisions violate plaintiffs' constitutional right to privacy.

However, this court has previously held that "[t]he fact that protected information must be disclosed to a party who has a particular need for it . . . does not strip the information of its protection against disclosure to those who have no similar need," and we have required the government to implement adequate safeguards against unnecessary disclosure. Fraternal Order of Police, 812 F.2d at 118. Because these motions were filed in this court in the first instance, the District Court has not had the opportunity to consider the information contained therein and to determine whether any action is appropriate in light of our precedent.

We note, for example, that at least one motion challenges the need for the scope of the community notification ordered, a challenge that may have some merit in light of a recent New Jersey decision on this issue. In In re Registrant R.F., No. A-6736-97T1, 1998 WL 925203, at *2 (N.J. Super. Ct. App. Div. 1998), the New Jersey Superior Court, Appellate Division, stated that under Megan's Law"it is the prosecutor's burden to prove by clear and convincing evidence not only the degree of risk created by registrant's presence in the community, but also the scope of notification necessary to protect the members of the

18

community likely to encounter him." The court required the prosecutor to establish to a reasonable certainty that a Tier II offender was at "risk to attack young children in the vicinity of their schools and playgrounds" before notice could be sent to schools in the community. Id. at *5 *6.

Although we will deny the plaintiffs' motions to supplement and the corresponding motions by Verniero, we do so without prejudice and will remand this matter so that the District Court can consider whether plaintiffs' interest in assuring that information is disclosed only to those who have a particular need for it has been accorded adequate protection in light of the information set forth in the motions.

VI.

For the reasons set forth above, we will affirm the District Court's decision granting summary judgment for the State defendants on plaintiffs' claim that the notification provisions of Megan's law violate their constitutional right to privacy as a matter of law. However, in light of our conclusion that the material set forth in the subsequent motions filed in this court should be considered by the District Court in the first instance, we will remand this case to the District Court so that plaintiffs can file their motions and the District Court can consider such material in light of plaintiffs' challenge to the ways in which Megan's law is being applied.

19

FULLAM, District Judge, concurring.

Solely because we are bound by the panel opinion in E.B. v. Verniero, 119 F.3d 1077 (3d Cir. 1997), I concur in the majority's disposition of this appeal. I do so with great reluctance, however, because I agree in all respects with the dissenting opinion of Judge (now Chief Judge) Becker in E.B. As the material submitted to us under seal (and, indeed, the records in E.B. and other reported cases) demonstrate, the theoretical and "feel-good" benefits of Megan's Law may in the long run, be overwhelmed by the law's negative consequences. Statutes enabling, even perhaps encouraging, vigilantism and similar harms, seem utterly at odds with constitutional values. Perhaps an expanded record in the district court on remand may provide a basis for ameliorative measures.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit